IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SHOPIFY, INC., et al.,                                    :
                                                         :
                    Plaintiffs,                          :
                                                         :
            v.                                           :       Civil Action No. 19-439-RGA
                                                         :
EXPRESS MOBILE, INC.,                                    :
                                                         :
                    Defendant.                           :

**MEMORANDUM ORDER**

This is a patent case.  Express Mobile has patents which it says Shopify infringes.  The parties have a discovery dispute about a 1,000+ item privilege log.  They submitted letters on their positions.  (D.I. 190, 191).  Thereafter, we had a discovery conference.  (D.I. 207).  Shopify wanted me to review twenty-one documents from the privilege log.  (D.I. 190 at 1; D.I. 196).   I declined to review three patent agent privilege claims and one other claim.  (D.I. 207 at 5:16-6:16, 13:15-14:4).  I asked Express Mobile to submit the other seventeen for *in camera* review.  Express Mobile submitted them.  (D.I. 199).  At the same time, it removed four of the seventeen from the privilege log "to narrow the issues."  (*Id.* at 2).  It further produced five other privileged items in camera "to provide context" for the remaining claims of privilege.  (*Id.* at 1-2).  Of course, this letter drew further comment from Shopify.  (D.I. 200).  I have reviewed *in camera* the remaining thirteen documents.

I do not address this dispute on a clean slate.  The parties earlier disputed claims of privilege relating to Express Mobile's patent agent that were resolved in a thoughtful opinion by Judge Corley.  *Shopify Inc. v. Express Mobile, Inc.*, 2020 WL 4732334 (N.D.Ca. Aug. 14, 2020).

The parties claim to have accepted her rulings, but that overstates the case.  Shopify's arguments are broader than they were before Judge Corley, raising new issues relating to non-patent-agent claims of privilege.  But Shopify also seems to want to relitigate "patent agent" privilege claims that were (or could have been) before Judge Corley.  At the discovery conference, I declined to do that.  Express Mobile (hereinafter "EM"), for its part, claims to have applied Judge Corley's rulings to the privilege log at issue in this case (D.I. 191-4 at 2), but, if that is so, EM has failed to understand her rulings.

I summarize the background to these disputes in relevant part.  EM is a company that by early 2013, and probably by some time in 2011 or 2012, wanted to monetize its patents by a licensing campaign that would involve at least the threat of litigation.  (D.I. 207 at 8:14-19, 11:11-16).  EM had multiple outside lawyers, most of whose roles are not entirely clear.  EM also had various non-lawyer employees, directors, and consultants, who seemed to spend quite a bit of time drafting claim charts relating to potential infringement by dozens (if not hundreds) of companies.  (D.I. 207 at 10:16-20).  The connection of any of these employees, directors, or consultants to the work of any of the lawyers is, for the most part, obscure.  EM's theory seems to be that anything related to licensing or infringement done by anybody connected to EM is privileged.  EM also engaged in negotiations and other efforts to sell its patents to another entity that would monetize them.  EM filed its first lawsuit on April 6, 2015, against Alibaba in the Eastern District of Texas.  (D.I. 207 at 12:2-3; Pacer Search).

For its part, Shopify says these documents are "relevant to damages as well as they're relevant for deposition and potential cross-examination material."  (D.I. 207 at 7:12-14).  This dispute does not actually involve any determinations about relevance.

The privileges at issue here are attorney-client, work product immunity, and "common interest." But "common interest" depends upon there being some underlying privilege, so "common interest" is not an independent basis for withholding production. *Express Mobile*, 2020 WL 4732334, at *8.

Here are my rulings. The documents are described by the last four digits on the privilege log excerpt. (*See* D.I. 196).

0231. A May 2013 email chain between Rempell and Mashima, neither of whom are lawyers. Rempell is trying to get Mashima to provide business contacts who might be interested in buying EM's patents. The chain refers to both "claim charts [that] are confidential so they can only be shared with people who are under a well-crafted NDA" and a "non-confidential attached pdf." It does not appear to involve attorneys or anticipated litigation, and I think the claim of privilege is frivolous. **DISCLOSE.**

0253. A May 2013 email chain that includes an email from EM's lawyer listing offers to purchase the patents from about four companies with expressions of interest from two more companies. It does not purport to provide legal advice. It is unrelated to any anticipated litigation. It does list topics for a discussion with the lawyer relating to the proposals, but the discussion topics are commercial, not legal. **DISCLOSE**.

0352. A June 2013 email chain involving negotiations with a third party, probably to sell patents, discussing with the third party whether EM should send the third party claim charts. The claim charts are (so far as I can tell) not part of this email chain, and the chain itself reflects business discussions between a potential seller and a potential buyer. There is no privileged communication, no anticipation of litigation, and therefore no common interest. **DISCLOSE.**

0355. The same email chain as 0352 but ending earlier. **DISCLOSE**.

0425.  A June 2013 email from Rempell to a non-lawyer EM employee with sixteen attached pages consisting of two lists of "potential infringers."  The email says (or strongly implies) that part of the list was sent pursuant to a non-disclosure agreement to two potential entities—Lexington and Blackhawk—who had expressed interest in purchasing the patents (*see* 0253) and the other list was going to be sent to a third potential purchaser (*see id.*).

**DISCLOSE**.

0918.  A November 2013 email from Rempell to an EM employee that is simply a business communication. I think the claim of privilege here is frivolous.  **DISCLOSE**.

1019.  A January 2014 email chain among EM employees where an EM attorney – Pete Marshall – is copied.  The email is an employee's request for a discussion on his proposal for restructuring of EM in preparation for a sale of the company for $15 million.  It does say, "Pete would have to provide guidance on any legal or procedural issues."  But it is not written seeking legal advice.  It is written primarily, if not entirely, as a business proposal.  *Express Mobile*, 2020 WL 4732334, at *3.  **DISCLOSE**.

1101. This a February 2014 email chain among employees of EM and a third party (said to be an investor/owner of EM since November 2013, *see* D.I. 196-1 at 4 of 5), referencing an "internal strategy discussion" on the "patent licensing campaign."  No lawyers are involved. (The five context emails are from 2012, 2012, 2015, 2015, and 2016, so they provide no help in terms of lawyer involvement in February 2014.).  There is an agenda for a conference call. While some of the agenda topics, which are stated at a high level of generality (such as "venue selection" as a subtopic of "litigation issues") are legal issues, there is no communication from an attorney and no basis to believe that something in the email chain was going to be provided to an attorney.  The attorney-client privilege has not been shown, and there is no basis to claim the

emails or the agenda is attorney work product. I also reviewed the eighty pages of attachments, none of which show any evidence of being the product of attorney-directed work or of being intended to be sent to attorneys. **DISCLOSE**.

1481. This is a May 2015 email among non-attorney EM employees speculating that Salesforce.com might be interested in EM's patent. The claim of privilege is frivolous. **DISCLOSE.**

1530.   A July 2015 email chain between two non-attorney EM employees.  The first five emails in the chain cannot possibly be privileged.  The last one is EM's Quality Assurance Manager and contractor who is seeking advice concerning his outline for "what should be in the screen shots for the claim charts."  The email chain in essence ends with a discussion of document presentation options for claim charts. I think this is a frivolous claim of privilege. **DISCLOSE.**

1556.  An August 2015 email in which an EM employee tells Rempell that he has an idea that "Chrome extensions are perfect for practicing our patents!"  That there is no attorney involvement is self-evidently obvious from the email.  **DISCLOSE**.

1563.  A November 2015 email chain among four non-attorney EM employees.  It reflects the receipt of attorney advice and a discussion as to how to respond to that advice. Essentially, the employees (which include the CEO, Rempell) are evaluating litigation strategy, and plan to discuss with the attorney after discussing amongst themselves.  **PRIVILEGED**.  **DO NOT DISCLOSE**.

1786.  An email chain in February 2018, in which the underlying email is from potential outside counsel, and I find that it is privileged.  I do not think the cover email waives its privileged nature.  **PRIVILEGED**.  **DO NOT DISCLOSE**.

There remains the question of what to do about the generally unreasonable positions taken by Express Mobile in regard to these particular documents, which presumably is an indication of an unreasonable position taken in regard to other documents, although I also believe that Shopify picked off low-hanging fruit through this dispute.

As a first attempt at a remedy, I am directing that Express Mobile review its privilege log for all documents (excepting those with a claim of patent agent privilege), and that it produce a revised privilege log, within five business days, that is, by December 10, 2020.  I direct that Express Mobile file one or more declarations under oath by the lawyer or lawyers responsible for the assertions of privilege in the revised privilege log, so that I know who to blame should Express Mobile continue to baselessly assert claims of privilege.  I also direct that Express Mobile file a letter stating how many items remain on the privilege log (not including ones covered by the patent agent privilege).  Shopify may respond two business days later, that is, December 14, 2020.  Assuming that disputes remain, I intend to refer them to a Special Master, who will have the power to apportion the costs of the referral, including attorney's fees.

IT IS SO ORDERED this 3rd day of December 2020.


/s/ Richard G. Andrews
United States District Judge