**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SHOPIFY INC. AND SHOPIFY (USA), INC., | ) | |
| | ) | |
| Plaintiffs/Counterclaim Defendants, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-cv-00439-RGA |
| | ) | |
| EXPRESS MOBILE, INC., | ) | Honorable Richard G. Andrews |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

**DEFENDANT AND COUNTER-CLAIM PLAINTIFF**
**EXPRESS MOBILE, INC.'S RESPONSES AND OBJECTIONS TO**
**SHOPIFY INC. AND SHOPIFY (USA), INC.'S PROFFER OF**
**FACTUAL TESTIMONY TO BE PROVIDED BY PRIOR ARTIST,**
**DR. MICHAEL ARNER**

Pursuant to the Court's order during the status conference on January 28, 2022, and in furtherance of Express Mobile's motion *in limine* to exclude the testimony of Dr. Michael Arner, Express Mobile, Inc. ("Express Mobile") hereby provides its responses and objections to Shopify Inc. and Shopify (USA), Inc.'s ("Shopify's") proffer of factual testimony to be provided by prior artist, Dr. Michael Arner.

Express Mobile's review of the submitted proffer reinforces that Dr. Michael Arner should be precluded from testifying at trial, consistent with Express Mobile's pending request to exclude his testimony.  Shopify disclosed Dr. Arner more than a year late and in this Court's words, "Shopify dropped the ball on the disclosure," and the "disclosure on September 24th, 2021—approximately a year after both fact and expert discovery closed in this case—"was a surprise."  (Ex. 1, Jan. 28, 2022 Tr. at 8:3-4, 9:11-12; D.I. 149, 193, 194.)  In its initial motion to exclude Dr. Arner (before it had the benefit of Shopify proffer), Express Mobile explained that Shopify would use Dr. Arner to "patch holes in Shopify's invalidity case and backfill its expert's invalidity opinions with testimony and materials that were not timely disclosed during fact or expert discovery."  (D.I. 351 at 1.)  Shopify's proffer now confirms that Express Mobile's earlier suspicions were correct, and that Dr. Arner will attempt to offer irrelevant and prejudicial testimony that extends beyond the prior art at issue and invalidity theories in Shopify's expert reports.  That is problematic because, as this Court has already explained, the prior art witnesses are "not terribly important because the question, generally speaking, . . . is what does a person of ordinary skill in the art understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11:8-13.)

The Court rightfully expressed "concern[]" during the latest hearing that despite "Shopify's representations of the modestness" of Dr. Arner's testimony, the proposed testimony in the proffer would extend well beyond the disclosures in the prior art reference. This Court has already explained that Dr. Arner "can't really say something different than what's . . . in their patent application." (Ex. 1, Jan. 28, 2022 Tr. at 14:4-6.) However, a review of Dr. Arner's proffer confirms not only that his testimony extends beyond the words of the Arner Provisional application, but also extends beyond Mr. Schmandt's (Shopify's expert's) understanding of the reference, in an apparent attempt to backfill deficiencies in the prior art reference and in its obviousness case more generally. Additionally, Dr. Arner's proposed testimony delves into expert testimony, the perspective of the POSA, and into issues of claim construction that are outside the scope of his alleged "fact" testimony and not permitted by Shopify's own cases.[1] Ultimately, Dr. Arner's testimony is irrelevant and unnecessary because the only prior art asserted is the Arner patent application—as the Court noted, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.) Dr. Arner's proffered testimony is irrelevant, untimely, improper expert testimony and highly prejudicial. Therefore, Dr. Arner should be excluded from testifying at trial.

---

[1] Shopify's half-page-long footnote 3 in Dr. Arner's proffer purports to advance various cases that permit his testimony. But the cases actually confirm that Dr. Arner is not permitted to furnish expert testimony or compare the prior art to the patent claims or the claim language—precisely what his 20 page proffer repeatedly does here. *See CertusView Techs. v. S&N Locating Servs.*, 2016 WL 6915303, at *1 (E.D. Va. March 7, 2016) ("[A]s Mr. Tucker has not been identified as an expert witness, he may not provide opinion testimony regarding the claims at issue."); *Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 WL 1330002, at *3-*4 (N.D. Cal. May 15, 2006) (striking testimony that attempts to compare prior art to the patent because such testimony "requires specialized knowledge"); *accord* 1340 (Fed. Cir. 2010) (permitting district court to "limit[] inventor testimony to factual testimony that did not require expert opinion").

**GENERAL OBJECTIONS**

Express Mobile objects to Dr. Arner's proffer testimony as being irrelevant and of little probative value insofar as it extends beyond the four corners of the prior art Arner Provisional Patent Application at issue in this case. Dr. Arner's testimony seeks to elaborate and expound upon alleged details that are not part of the reference, and thus irrelevant for purposes of the obviousness arguments that are the only basis for discussing the reference in the case. Pursuant to Federal Rule of Evidence 403, the probative value of Dr. Arner's testimony is outweighed by the danger of unfair prejudice from admitting testimony that is outside of the scope of the only prior art reference at issue.

Express Mobile also objects to the proffer as being improperly vague to the extent that it does not provide foundation for most of the testimony that is being proffered. In particular, apart from one generic reference to the Arner patent publication and incorporated provisional application (DTX-022, DTX-023, DTX-024, and DTX-025 (collectively, the "Arner" reference)), the proffer does not provide any citations to any portions of the Arner reference that allegedly pertain to his testimony, which forces Express Mobile to itself evaluate and compare Dr. Arner's proffered testimony to the Arner reference, and has placed a significant burden on Express Mobile in its effort to respond and object to Dr. Arner's proffer. Express Mobile's review of the Arner reference and comparison to the four corners of the reference confirms that much of the testimony that Shopify seeks to elicit extends beyond the four corners of the reference.

Express Mobile also objects as a general matter to Dr. Arner's proffered testimony as being beyond the scope of proper lay witness opinion testimony under Federal Rule of Evidence Rule 701, which must be solely "based on the witness's perception" and "not based on scientific,

technical, or specialized knowledge within the scope of Rule 702." Numerous aspects of Dr. Arner's proffered testimony reflect expert opinion based on Dr. Arner's specialized knowledge that would normally be within the province of Federal Rule of Evidence 702. Indeed, the proffer attempts to qualify Dr. Arner as a person of ordinary skill ("POSA") (*see* Arner Proffer ¶ 6) and then has Dr. Arner associate various alleged teachings of Arner with claim language and limitations recited within the '755, '287, and '044 patents. While the effort to use Dr. Arner to supply expert testimony is not expressly admitted in Dr. Arner's proffer, it is plainly what Shopify is attempting to do as explained in the paragraph-by-paragraph analysis below, and as confirmed by the structure of the proffer, which is written like an expert report and repeatedly attempts to render expert testimony. Dr. Arner is also being paid $500 per hour for his time advising and preparing his testimony, much like an expert, and Dr. Arner intends to continue charging that hourly rate. (*See* Ex. 2, Arner December 8, 2021 Dep. Tr. at 31:18-33:23, 48:17-49:11; Ex. 3, Arner March 22, 2022 Dep. Tr. at 38:11-40:6.) Dr. Arner was never disclosed as an expert in this case during expert discovery and, again, was not even disclosed as an alleged fact witness for more than a year after fact discovery closed. Shopify's attempt to submit untimely and improper expert testimony to rebut Express Mobile's expert opinions now is clearly improper and highly prejudicial as Express Mobile has followed the Court's scheduling order and has no opportunity to respond to these new alleged opinions and theories that attempt to fill holes in Shopify's invalidity arguments.

To the extent that Dr. Arner's proffer testimony does address issues that are discussed in the Arner prior art reference that are within the scope of Mr. Schmandt's expert reports, Express Mobile further objects to his proffered testimony under Federal Rule of Evidence 403 because

that testimony's probative value is substantially outweighed by the cumulative nature of the evidence, when that same evidence can be addressed by Mr. Schmandt, Shopify's expert.

Shopify insinuates that Express Mobile's opportunity to depose Dr. Arner mitigates any prejudice that has accrued to Express Mobile.  But that is not true.  During his second deposition that occurred after the Court ordered Shopify to submit this proffer, Dr. Arner had not even been told by counsel that he was going to submit a proffer in this case, and he had not spent any time preparing his proffer in advance of the deposition.  (*See* Ex. 3, Arner March 22, 2022 Dep. Tr. at 40:11-41:19.)  Therefore, Dr. Arner could not speak to the contents of his proffer, and Express Mobile could not probe the metes and bounds of the issues that were ultimately addressed in the proffer.

## SPECIFIC OBJECTIONS

Subject to the general objections stated above, which are incorporated into each individual response by reference, Express Mobile lodges specific objections to Dr. Arner's proffer on a paragraph-by-paragraph basis, as explained below.

**Paragraph 1:**  Dr. Arner is the first named inventor of U.S. Patent Publication No. 2009/0013310 (the "'310 application") (DTX024 & DTX025), which expressly incorporates the entirety of provisional application 60/969,428 (the "'428 application") (DTX022 & DTX023) by reference (together, the "Arner" reference). Shopify contends that Arner renders the asserted claims of the '755, '287, and '044 patents obvious. Dr. Arner will testify that he was involved in the drafting of Arner and will provide the jury with context about Arner, including the research and development work that is reflected in the disclosures of Arner, as well as what motivated this work. Additionally, Dr. Arner will explain the key features described in Arner for mobile application development and explain what motivated the development of these features. He will also explain what he intended to convey about his development work and the functionality described in Arner.

**Responses and Objections to Paragraph 1:**  That Dr. Arner is the inventor of the "Arner" reference is known from the face of the patents and testimony is not needed to establish that fact.  The fact that "Shopify contends that Arner renders the asserted claims of the '755,

'287, and '044 patents obvious" is not relevant to a fact witnesses' testimony, and obviousness should not be discussed by a fact witness.  To the extent that Dr. Arner will testify about "context" of Arner, the remainder of this paragraph is vague and does not place Express Mobile on notice of the precise nature of the testimony.  For example, the paragraph states that Dr. Arner will testify about "research and development work that is reflected in the disclosures of Arner," "key features described in Arner," and the "functionality described in Arner," without identifying the pertinent disclosures of Arner.  This makes it impossible to ascertain whether the proffered testimony in this paragraph is appropriate.  Moreover, to the extent that Dr. Arner seeks to elaborate on functionality and disclosures in Arner, this Court already stated that the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  To the extent Dr. Arner seeks to testify about what "he intended to convey" in Arner in an effort to expand or change the disclosure in Arner this is improper, irrelevant, untimely expert opinion and prejudicial.   The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 2:**  Dr. Arner's testimony will be helpful to the jury in understanding what challenges existed at the relevant time and his solutions to these problems, which will provide the jury with additional context to consider and compare with expected analogous testimony from at least two of the named inventors on the Asserted Patents.

**Responses and Objections to Paragraph 2:**  Shopify states that Dr. Arner's testimony will be helpful to the jury in understanding "what challenges existed at the relevant time and his solutions to these problems," but to the extent any challenges and solutions are relevant they are already recited in the Background of the Invention of the Arner reference and the disclosures of the Arner reference itself.  Again, this paragraph is vague insofar as it does not identify the "challenges" and "problems" that Dr. Arner will discuss in his testimony.  Thus, it is not clear what "additional context" Dr. Arner will testify about.  To the extent that Shopify asserts that Dr.

6

Arner should be permitted to provide testimony that can be "compared with expected analogous testimony from at least two of the named inventors on the Asserted Patents," Shopify speculates on the scope of the inventors' testimony, ignores that Express Mobile's inventors were timely disclosed under the rules, and ignores that its expert's testimony can be compared to any testimony of Express Mobile's inventors.  Express Mobile's inventors are not relevant to whether Dr. Arner's testimony should be permitted, and Shopify's effort to inject them into this issue is entirely improper.   To the extent Dr. Arner seeks to testify about what alleged challenges or solutions that are not disclosed in Arner this is improper, irrelevant, untimely expert opinion and prejudicial.   The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 3:**  Dr. Arner will identify himself as the first named inventor on the '310 application, which expressly incorporates the '428 application in its entirety by reference.

**Responses and Objections to Paragraph 3:**  That Dr. Arner is the first named inventor on the '310 application is a fact that is known from the face of the '310 patent application, and this testimony is therefore irrelevant and cumulative.

**Paragraph 4:** Dr. Arner will testify that he is a co-founder of Roam Data, Inc. the assignee of the '428 and '310 applications. Dr. Arner will testify that Roam Data was founded in 2005, and that he submitted the '428 application on August 31, 2007. Dr. Arner will testify that he submitted the '310 application on August 27, 2008. Dr. Arner will testify that the '310 application incorporates all the content of the '428 application by reference.

**Responses and Objections to Paragraph 4:**  The dates that Dr. Arner submitted the '428 and '310 applications are known from the face of those patent applications, and the fact that the '310 applications incorporates the '428 application by reference is also known from the face of the patent application, with the latter being a legal conclusion.  The date Roam Data, Inc. was founded and the founders of Roam Data, Inc. are not relevant.

**Paragraph 5:** Dr. Arner will testify that he developed a product (the "RoamData Suite of Development Tools") while at Roam Data, and the functionality and technical details of that product as it existed as of August 31, 2007 are included within the '428 and '310 patent applications, respectively, including Appendix A filed as part of the '428 application, which is titled RoamData "Integrated Development Environment User Manual."

**Responses and Objections to Paragraph 5:** If the technical details of the RoamData Suite of Development Tools "are included within the '428 and '310 patent applications, respectively, including Appendix A filed as part of the '428 application," Dr. Arner's testimony about that product would be cumulative to the information already included in the patent application. Any alleged information regarding the RoamData Suite of Development Tools that is not disclosed in the Arner applications is irrelevant, untimely and undisclosed expert opinion and highly prejudicial. The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 6:** Dr. Arner will testify that by August 31, 2007, he was well-versed in HTML, JavaScript, and CSS and was familiar with server-side scripting and developing programs using languages such as Java, C++, or Visual basic. He will explain he has an undergraduate degree in Computer Science/Mathematics. He will also state that by August 31, 2007, he had knowledge of, and experience with, software development and web design and development with graphical user interfaces and systems.

**Responses and Objections to Paragraph 6:** This proffered testimony is an attempt to qualify Dr. Arner as a person of ordinary skill (POSA) so that he can render testimony that would be relevant to an obviousness analysis, underscoring the impropriety of his proffered testimony. The proffer states that Dr. Arner will testify that "he was well-versed in HTML, JavaScript, and CSS and was familiar with server-side scripting and developing programs using languages such as Java, C++, or Visual basic," which is identical to Shopify's expert's POSA qualifications. (*See* Ex. 4, Schmandt Opening Report ¶ 26 ("[A] POSA would be well versed in HTML, JavaScript, and CSS and would be familiar with server-side scripting and developing programs using higher level languages, such as Java, C++, or Visual Basic.").) And the

paragraph also states that Dr. Arner will testify that "he has an undergraduate degree in

Computer science/Mathematics," which parallels Mr. Schmandt's POSA requirement that the

POSA "would be a person with a Bachelor of Science in Computer Science." (*Id.*) The

proffered testimony is also irrelevant to what the Arner references disclose to POSA.

**Paragraph 7:** Dr. Arner will testify that '428 application (designated DTX022) is an authentic copy of the '428 application, in light of Express Mobile's objections to this document as unauthentic. *See* D.I. 324-08 at entry for DTX022. Dr. Arner will also confirm that he has knowledge of the '428 application as presented at trial, and that the '428 application is the application incorporated by reference into the '310 application, in light of Express Mobile's objection to the '428 application as lacking foundation. *Id.* Dr. Arner will also confirm that the '428 application is complete, in light of Express Mobile's objection to the '428 application as incomplete. *Id*. Dr. Arner will provide similar testimony with respect to the '310 application, to the extent Express Mobile makes any similar objections to this application.

**Responses and Objections to Paragraph 7:** Dr. Arner does not need to testify to the

authenticity or completeness of DTX-022, or to the '428 and '310 patent applications, because

Express Mobile agrees to withdraw any objection to the authenticity of that exhibit, and to any

incompleteness or related objections. The proffered testimony is therefore irrelevant.

**Paragraph 8:** Dr. Arner will testify that he has personal knowledge of the '428 and '310 applications, that he is familiar with them and the records of the Patent Office as they relate to the '428 and '310 applications, that he recognizes the '428 and '310 applications as presented at trial as true and authentic copies of those applications, and that the '428 and '310 applications are complete copies of those applications.

**Responses and Objections to Paragraph 8:** Dr. Arner does not need to testify to the

authenticity or completeness of DTX-022, or to the '428 and '310 patent applications, because

Express Mobile agrees to withdraw any objection to the authenticity of that exhibit, and to any

incompleteness or related objections. The proffered testimony is therefore irrelevant.

**Paragraph 9:** Dr. Arner will testify that he personally wrote, or assisted in writing, much of Arner, including the user manual that is included as Appendix A to the '428 application. Dr. Arner will testify that Appendix B to the '428 application is exemplary XML code for an application created using the disclosures of Arner.

**Responses and Objections to Paragraph 9:**  Dr. Arner does not need to testify to whether he personally wrote or assisted with the drafting of Appendix A or Appendix B of the '428 application because Express Mobile agrees to withdraw any objection to the authenticity of that exhibit, and to any incompleteness or related objections, and the disclosures speak for themselves based on their inclusion in the '428 application and the references to Appendix A and B within that application, which already clarify the purpose of Appendix A and B within the '428 application.  (*See* Ex. 5, DTX-022 at 0019 ("The user-experience for application-authoring with the Roam IDE is described in the attached document in Appendix A."); *id.* at 0023 ("XML generated from the existing application is shown in Appendix B.").)  The proffered testimony is also irrelevant to what the Arner references disclose to POSA.

**Paragraph 10:** Dr. Arner will testify about the problems he faced and considered as part of the conception of Arner in approximately 2005-2007, and the solutions he developed to address them, which are reflected in the disclosures of Arner.  (Footnote 5 Text: Throughout, Dr. Arner's testimony will be based on the disclosures of Arner, and he will explain the problems he faced, his motivations for the solutions he pursued, as well as his goals for the disclosures set forth in Arner.).

**Responses and Objections to Paragraph 10:**  Once again, Shopify's proffer generically refers to alleged testimony about "problems" and "solutions" that Dr. Arner will testify about, and that the testimony will be "reflected in the disclosures of Arner" and that the testimony "will be based on the disclosures of Arner" and "goals for the disclosures set forth in Arner."  These statements are again vague and conclusory because they provide no reference to the disclosures of Arner that form the basis for Dr. Arner's testimony, forcing Express Mobile to guess Dr. Arner's testimony.  Moreover, to the extent that Dr. Arner seeks to elaborate on functionality and disclosures in Arner, this Court already stated that the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  Any alleged information regarding "problems" or "solutions" that are not disclosed in the Arner applications

is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered

testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and

403.

      **Paragraph 11:** Dr. Arner will testify as to what he intended to be conveyed in Arner. Dr. Arner will testify as to the motivations behind functionality and tools described in Arner the way he did.

      **Responses and Objections to Paragraph 11:**  By stating that "Dr. Arner will testify as

to what ***he intended to be conveyed in Arner***," Shopify admits that it is attempting to use Dr.

Arner to change the meaning of the reference so that it means something different from what is

expressed in the plain text of the reference itself, and that it is attempting to use Dr. Arner to

supplement and fill deficiencies in the Arner reference.  Again, to the extent that Dr. Arner seeks

to elaborate on functionality and disclosures in Arner, this Court already stated that the "patent is

whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I.

342 (PTC) at 23.)  Further to the extent that "Dr. Arner will testify as to the motivations behind

functionality and tools described in Arner the way he did," it appears that Shopify is again

attempting to use Dr. Arner to exceed the scope of the disclosures of the reference, and that it is

attempting to impute motivations to Dr. Arner's conduct that might be used in an obviousness

analysis to buttress Mr. Schmandt's obviousness arguments pertaining to motivations the POSA

might have had to modify Arner.  This is irrelevant, untimely, undisclosed expert opinion and

highly prejudicial and should be excluded pursuant to FRE 402 and 403.

      **Paragraph 12:** Dr. Arner will testify that the disclosures of Arner relate to an integrated development environment (IDE), which is a software tool that allows a user to author and develop Rich Internet Applications ("RIAs" or "applications"). Dr. Arner will testify that the Arner reference uses the term "Rich Internet Applications" to refer to applications that interacted with the Internet and were designed to replicate the more robust user experience of desktop applications.

**Responses and Objections to Paragraph 12:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  To the extent it is not cumulative, the proffered testimony appears to be an attempt to change or expand the disclosure of the reference.  For example, the proffer states that "Dr Arner will testify that the Arner reference uses the term 'Rich Internet Applications' to refer to applications that interacted with the Internet and were designed to replicate the more robust user experience of desktop applications," but the Arner reference more-specifically states that "Rich Internet Applications (RIA) are smart-client web-applications that have the functionality of traditional desktop applications, but transfer the processing necessary for the user interface to the web client while keeping the bulk of the data back on the application server."  (Ex. 5, DTX-022 at 0005-0006 (1:30-2:2).)  Any alleged testimony that is not disclosed in the Arner applications is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 13:**  Dr. Arner will Dr. Arner will testify that one of the goals in developing Arner was to allow for creation of RIAs that are designed to run across a variety of remote computing devices, such as mobile phones.

**Responses and Objections to Paragraph 13:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  To the extent it is not cumulative, the proffered testimony appears to be an attempt to change the precise meaning of the reference.  For example, the Arner reference states that "[t]he present invention relates to a system and a method for developing Rich-Internet Applications (RIAs), and in particular to an Integrated Development Environment (IDE) for developing RIAs designed to run on remote computing devices."  (Ex. 5, DTX-022 at 0005 (1:5-7); *see also* Ex. 5, DTX-022 at 0009 (5:8-10).)  Any alleged testimony that is not disclosed in the Arner applications is irrelevant,

untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 14:**  Dr. Arner will testify that another goal of the research and development work reflected in the disclosures of Arner was to enable convenient, simple development of secure, effective business applications for use on mobile devices whose limited native processing power might otherwise make such rich functionality impossible.

**Responses and Objections to Paragraph 14:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  Indeed, the proffered testimony in this paragraph is essentially a direct quotation from the Arner reference, which states that "[t]he RoamData Integrated development environment enables convenient, simple development of secure, effective business applications for use on mobile devices whose limited native processing power might otherwise make such rich functionality impossible."  (Ex. 5, DTX-022 at 0039.)  There is no need for Dr. Arner to repeat essentially verbatim statements that are already in the reference, which would be cumulative to the Arner reference and have limited probative value relative to their prejudicial effect.  To the extent Dr. Arner attempts to expand or change the disclosure in the Arner reference, such testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 15:**  Dr. Arner will testify that the intended users of the tools and methods described in Arner included skilled software developers, but also include persons with little or no programming experience. Dr. Arner will testify that one of the goals of the functionality reflected in the disclosures of Arner was to make application development easier and more accessible to laypersons.

**Responses and Objections to Paragraph 15:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  Indeed, the proffered testimony in this paragraph is similar to statements in the reference.  (*See, e.g.*, Ex. 5, DTX-022 at 0039 ("While some programming experience is always useful, this book assumes no such

experience.  It should be possible for developers with extremely limited programming experience

to develop RoamData applications.").)  There is no need for Dr. Arner to repeat statements that

are already in the reference, which would be cumulative to the Arner reference and have limited

probative value relative to their prejudicial effect.    To the extent Dr. Arner attempts to expand

or change the disclosure in the Arner reference, such testimony is irrelevant, untimely,

undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded

pursuant to FRE 402 and 403.

> **Paragraph 16:**  Dr. Arner will further testify that one of his goals was to make it possible
> for users to develop and deploy mobile applications without needing to write any code
> themselves. Dr. Arner will testify that this was a goal, because historically, from his perspective,
> development of mobile applications required a highly-skilled programmer, which increased the
> burden associated with developing new mobile applications.

> **Responses and Objections to Paragraph 16:**  This testimony is at best cumulative to

what is provided in the Arner reference and is therefore unnecessary.  Moreover, it appears that

the proffered testimony overstates the disclosures of the Arner reference, which never states that

the Roam Data IDE can be used to "develop mobile applications ***without needing to write any***

***code themselves***."  Instead, the reference says that "[i]t should be possible for developers with

extremely limited programming experience to develop Roam Data applications," and never states

that it is possible to write a Roam Data application without needing to write any code

whatsoever.  (Ex. 5, DTX-022 at 0039.)  This appears to be another attempt to expand Arner's

disclosures beyond what it actually says, contrary to this Court's admonition that "patent is

whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I.

342 (PTC) at 23.)    To the extent Dr. Arner attempts to expand or change the disclosure in the

Arner reference, such testimony is irrelevant, untimely, undisclosed expert opinion and highly

prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 17:**  Dr. Arner will testify that he considered the mobile environment more challenging to develop applications that the desktop environment, because the mobile environment was less mature. Dr. Arner will testify that in his personal experience, fewer developers were familiar with the specific operating systems and coding languages for mobile phones at the time of his development work, compared to the number of developers with knowledge of this information with respect to desktop applications.

**Responses and Objections to Paragraph 17:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony is therefore irrelevant and should be excluded pursuant to FRE 402.

**Paragraph 18:**  Dr. Arner will testify that by the time of his development of Arner, he did not consider it difficult to develop desktop applications. Dr. Arner will testify that functionality described in Arner reflects his attempts to minimize and reduce the increased challenges associated with mobile application development compared to desktop application development.

**Responses and Objections to Paragraph 18:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony is therefore irrelevant and should be excluded pursuant to FRE 402.

**Paragraph 19:**  Dr. Arner will testify that security concerns for internet-based mobile applications also motivated certain aspects of the disclosures in Arner he developed, but it was only one of the concerns that was motivating the development of the functionality described in Arner.

**Responses and Objections to Paragraph 19:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary insofar as it states that "security concerns for internet-based mobile applications also motivated certain aspects of the disclosures in Arner he developed."  The proffered testimony that security "was only one of the

concerns that was motivating the development of the functionality described in Arner" is an attempt to recharacterize the reference, which is primarily focused on secure web service data transmission. Moreover, to the extent that concerns other than security might have animated the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.) To the extent Dr. Arner attempts to expand or change the disclosure in the Arner reference, such testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial. The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 20:** Dr. Arner will testify that the disclosures in Arner describe functionality and tools for the creation and development of mobile applications that: (1) are built using an integrated development environment (IDE) that simplifies development work; (2) include integrated web services functionality; (3) are designed to be run on any device, provided the user of the device has installed the appropriate application player for his or her device with the correct application player; (4) include security features that use an intermediary server to mediate and approve connections with the integrated web services, (5) are designed to communicate with remote third-party web services or with web services located on the intermediary server, and (6) could easily be adapted to run in a web browser.

**Responses and Objections to Paragraph 20:** This paragraph purports to be about what "the disclosures in Arner describe," but it is a blatant attempt to expand the scope of the reference and use Dr. Arner to provide expert testimony. For example, the proffered testimony includes a quintessential obviousness opinion because it says that Arner "could easily be adapted to run in a web browser," even though the Arner reference does not disclose any embodiments of the RoamData IDE that run in a web browser—this aspect of the testimony is expert testimony under Rule 703. Indeed, Mr. Schmandt proffers an almost identical opinion in his expert report. (Ex. 4, *See* Schmandt Opening Report ¶ 1161 ("Although not explicitly disclosed, a POSA would recognize that a player could also be developed [for Arner] to run in a web browser.").) Moreover, the remaining portions of the proffered testimony does not include any citations to the

Arner reference and appears to be an attempt to reframe, expand or change several disclosures of

the Arner reference. To the extent that this testimony addresses content that is actually in the

Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't

make it something else." (D.I. 342 (PTC) at 23.) Dr. Arner's proffered testimony is irrelevant,

untimely, undisclosed expert opinion and highly prejudicial. The proffered testimony should be

excluded pursuant to FRE 402 and 403.

**Paragraph 21:** Dr. Arner will testify that some of the possible mobile applications he
envisioned could be built with using the tools described in Arner included applications with web
service functionality for processing credit card payments and implementing shopping carts.

**Responses and Objections to Paragraph 21:** This testimony is at best cumulative to

what is provided in the Arner reference and is therefore unnecessary. To the extent that this

testimony addresses content that is not in the Arner reference, the "patent is whatever the patent

is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.) To

the extent Dr. Arner attempts to expand or change the disclosure in the Arner reference, such

testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial. The

proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 22:** Dr. Arner will testify that the tools disclosed in Arner were designed with
the goal of making mobile application development for different mobile device platforms easier.
Dr. Arner will testify one of these tools was an integrated development environment ("IDE")—
i.e., the software interface used to author and develop applications.

**Responses and Objections to Paragraph 22:** This testimony is at best cumulative to

what is provided in the Arner reference and is therefore unnecessary. To the extent that this

testimony addresses content that is not in the Arner reference, the "patent is whatever the patent

is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.) The

proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 23:**  Dr. Arner will testify that the IDE described in Arner reduced the skill level necessary to develop mobile applications, and allowed non-software developers to develop mobile applications, because it provided for drag-and-drop functionality without the need to write code.

**Responses and Objections to Paragraph 23:**  The proffered testimony in this paragraph overstates the disclosures of the Arner reference and appears to be an attempt to expand the reference beyond what it actually says.  Specifically, the proffer states that the Arner reference "provided for drag-and-drop functionality ***without the need to write code***."  But the reference does not state that it completely vitiates the need to write code.  Instead, it says that "the RoamData Suite of Development Tools uses drag-and-drop and WYSIWYG functionality ***whenever possible***."  (Ex. 5, DTX-022 at 0039 (emphasis added).)  Similarly, the reference says that "[i]t should be possible for developers with extremely limited programming experience to develop Roam Data applications," but never states that it is possible to write a Roam Data application without needing to write any code whatsoever.   (Ex. 5, DTX-022 at 0039.)  This appears to be another attempt to expand Arner's disclosures beyond what it actually says, contrary to this Court's admonition that "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  To the extent Dr. Arner attempts to expand or change the disclosure in the Arner reference, such testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 24:** Dr. Arner will testify that a tool included in the IDE in Arner, called the "WSDL Integrator," allows the user to add web service functionality into the application being designed Dr. Arner will testify that the WSDL integrator reads the WSDL file defining a web service and then presents the expected parameters in a table to the user of the IDE, which can be used to generate the user interface around the web services functionality.

**Responses and Objections to Paragraph 24:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  To the extent that this

testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.) The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 25:**  Dr. Arner will testify that the benefit of the WSDL integrator disclosed in Arner is that it allows a user to easily integrate web services functionality into the application they are developing. Dr. Arner will testify that the WSDL integrator disclosed in Arner allows the user to either manually associate graphical components to be displayed with the expected web service parameters by dragging-and-dropping, or to have the WSDL integrator automatically create the graphical components for use with the parameters.

**Responses and Objections to Paragraph 25:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary. (*See* Ex. 5, DTX-022 at 0064-0068.) To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.) The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 26:** Dr. Arner will testify that the functionality and tools described in Arner were designed to provide both options, to allow users to choose how much customization was desired. Additionally, Dr. Arner will testify that his goal in designing the IDE was to simplify the process of integrating web services into an application, even for persons with little software development experience.

**Responses and Objections to Paragraph 26:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary. To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.) The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 27:** Dr. Arner will testify that an example integration of a web service into an application is discussed in Arner. Dr. Arner will testify that the tools described in Arner were not limited to this exemplary implementation, however, and were designed to allow for integration of any WSDL-based web service into a mobile application.

**Responses and Objections to Paragraph 27:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 28:** Dr. Arner will testify that the WSDL integrator provided this functionality by examining WSDL files, computing the functions and parameters described in those files, and displaying this information in a table for the user to implement as part of their application development.

**Responses and Objections to Paragraph 28:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 29:** Dr. Arner will further testify that this information is used by the WSDL integrator and IDE described in Arner to create graphical components around the web service functionality, which an end-user of the application would interact with to access the web service.

**Responses and Objections to Paragraph 29:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 30:**  Dr. Arner will testify by reference to the example application found in Appendix B of the '428 application that applications created using the disclosures in Arner include code that links the user interface to the actual request and response sent to the web service, and it does that by using the names of the functions and parameters found in the WSDL file and associating them with the graphical components that form the user interface.

**Responses and Objections to Paragraph 30:**  To the extent that "Dr Arner will testify by reference to the example application found in Appendix B," it appears that Shopify is using Dr. Arner to expound upon the source code in Appendix B from the perspective of the POSA to provide expert testimony about the source code's functionality.  Shopify is improperly attempting to use Dr. Arner to backfill testimony that it did not disclose in its invalidity case.  To the extent that this testimony addresses content that is in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23).  Moreover, Appendix B  of the '428 application is already referenced and discussed in Mr. Schmandt's expert reports.  (*See, e.g.*, Ex. 4, Schmandt Opening Report ¶¶ 1142, 1151; Ex. 6, Schmandt Reply Report ¶ 1021.)  Thus, to the extent that any interpretive gloss should be placed on the disclosures of Appendix B, Shopify should be limited to the discussion of Appendix B in Mr. Schmandt's reports. Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 31:** Dr. Arner will testify that the IDE described in Arner allows developers to add graphical components easily and efficiently to an application. Dr. Arner will testify that there were several different graphical components in Arner that could be added, depending on desired use.

**Responses and Objections to Paragraph 31:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 32:**  Dr. Arner will testify that a user of the IDE described in Arner could manually associate available graphical components with a web service input or output. Alternatively, graphical components could be automatically created by the WSDL integrator,

based on the analysis of the WSDL file defining the web service. Dr. Arner will testify that these features were included in tools described in Arner to help fulfill the goal of creating a tool that would allow users of the IDE to quickly and easily build applications that included web service functionality.

**Responses and Objections to Paragraph 32:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  A similar statement already appears in Mr. Schmandt's expert report.  (*See* Ex. 4, Schmandt Opening Report ¶ 1136 ("Arner discloses that either a user can manually integrate the web service call into the application (*see* SHOP0264530-31) or the system can automatically integrate the web service call into the application (*see* SHOP0264531)."); *see also* Ex. 6, Schmandt Reply Report ¶ 965.) The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 33:**  Dr. Arner will testify that the tools could also be used to provide additional functionality described in Arner, referred to as "extended components." Dr. Arner will testify that these extended components are bundled software that includes all the code necessary to interact with a web service bound to specific graphical components.

**Responses and Objections to Paragraph 33:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.) Moreover, it appears that Shopify is attempting to use this testimony to expand its discussion of the Arner reference beyond any discussion that appears in Mr. Schmandt's expert reports.  The phrase "extended components" is not referenced a single time in Mr. Schmandt's reports when addressing obviousness arguments based on Arner, and it appears that Shopify is attempting to use Dr. Arner to inject this portion of the Arner reference into its obviousness theories for the

first time.  Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 34:**  Dr. Arner will testify that one such "extended component" in Arner is a credit card widget, which a user could select to add credit-card payment processing quickly and easily to their application. Dr. Arner will testify that these extended components were pre-defined within the IDE and could be selected by the user during the application development process. Dr. Arner will testify that this functionality also furthered his goal of creating tools that simplified the process of developing mobile applications that included web service functionality.

**Responses and Objections to Paragraph 34:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  As noted with regard to the objection in the previous paragraph, the concept of an "extended component" is never addressed in Mr. Schmandt's obviousness theories.  Moreover, no "credit card widget" is mentioned in Mr. Schmandt's reports.  At most, Mr. Schmandt's expert reports mention a "credit card textbox" (*see* Ex. 4, Schmandt Opening Report ¶ 1127; Ex. 6, Schmandt Reply Report ¶ 989), ***but they do not*** mention a "credit card widget" or anything that could be "select[ed] to add credit-card payment processing quickly and easily to their application."  Dr. Arner, again, should not be permitted to expand the scope of Shopify's expert's testimony.

Moreover, this testimony is a transparent attempt to rebut Dr. Almeroth's (Express Mobile's expert) argument that Arner does not disclose pre-defined relationships involving web components because it relies on imported WSDL documents. (*See, e.g.* Ex. 7, Almeroth Rebuttal Report ¶¶ 842, 896.)   In proffering testimony now that "extended components ***were pre-defined*** within the IDE and could be selected by the user during the application development process," Shopify is attempting to backfill expert testimony that is not in Mr. Schmandt's reports and, to

the extent that Shopify asserts such testimony is in Mr. Schmandt's reports, it is duplicative and

unnecessary.  Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion

and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and

403.

> **Paragraph 35:**  Dr. Arner will testify that the IDE described in Arner allowed a
> developer to register an application in an application database and publish that application, which
> means that the application is made available on a server and can be downloaded onto an
> authorized user's mobile device.

> **Responses and Objections to Paragraph 35:**  This testimony is misleading and

improper attempt to expand the scope of the Arner reference because neither the Arner reference

nor even Mr. Schmandt refer to an application database as being used to "***register*** an application

in an application database."  It appears that Dr. Arner is proffering expert testimony that attempts

to link the application database to the registry recited in the claims.  While there is an

"application database" referenced in Arner, the discussion in the specification about the

application itself is limited to storage of applications, not registration of applications.  (*See* Ex. 5,

DTX-022 at 0013-0014 (9:23-10:11); Ex. 4, Schmandt Opening Report ¶ 1141; Ex. 6, Schmandt

Reply Report ¶ 1013.)  Moreover, the proposed expansive interpretation that the alleged

registration in an application database "means that the application is made available on a server

and can be downloaded onto an authorized user's mobile device" is quintessential expert

opinion, and is an attempt to use Dr. Arner to expand the scope of the reference based on expert

opinion.  To the extent that Shopify asserts this proffered testimony addresses content that

actually is in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking

about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  Dr. Arner's proffered

testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The

proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 36:** Dr. Arner will testify that the application in Arner could be generated automatically by the IDE based on selections made by the user, which furthered his goal of simplifying the mobile application development process and minimizing, or even eliminating, the need for users to write code directly for their applications.

**Responses and Objections to Paragraph 36:**  Express Mobile incorporates its response to paragraph 32 of Dr. Arner's proffer, which includes similar proposed testimony.  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 37:**  Dr. Arner will testify that he was aware of three types of applications for interfacing with web services when he was developing Arner: 1) desktop applications; 2) web-based applications; and 3) smart client applications. Dr. Arner will testify that each of these types of applications had features and drawbacks and that one of his goals was to provide applications that combined the best features of these individual types of applications, without the same drawbacks.

**Responses and Objections to Paragraph 37:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  (*See* Ex. 5, DTX-022 at 005-007.)  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 38:**  Dr. Arner will testify that by August 31, 2007, there were many different mobile devices that used different operating systems such as Windows CE, Palm, and different versions of J2ME. Dr. Arner will testify that he considered different known solutions for mobile application development, but these solutions (which include solutions using J2ME, .NET, AJAX, asynchronous JavaScript and XML, FLEX, Flash Lite, LAZSLO, and WAP browsers), did not fully address the problems he was trying to solve or the goals he was trying to achieve.

**Responses and Objections to Paragraph 38:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  (*See* Ex. 5, DTX-022 at 007-008.)  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 39:**  Dr. Arner will testify that some of the problems left unaddressed by these known solutions included: being too "heavy" for cell phone application development; difficulty in programming; multiple requirements for custom solutions on the device, server, and network;
insufficient security controls; lack of compliance with web service standards; limited offline capabilities; significant bandwidth demands; and limited access to device resources. Dr. Arner will testify that the disclosures of Arner address and overcome the limitations of these known solutions.

**Responses and Objections to Paragraph 39:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  (*See* Ex. 5, DTX-022 at 005-008.)  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 40:**  Dr. Arner will testify that as of August 31, 2007, mobile remote devices included mobile phones, personal digital assistants (PDAs), point of sale devices, tablets, pagers, and laptop computers, among others. Dr. Arner will testify that many of these devices were underpowered, often not connected to the internet, had limited bandwidth, had limited storage, had limited processing capacity, were susceptible to loss or theft, had varying capabilities, and ran on varying platforms and operating systems. Dr. Arner will testify that recognition of the limitations of mobile devices and a desire to overcome them were key motivations in the design and development of the disclosures of Arner.

**Responses and Objections to Paragraph 40:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  (*See* Ex. 5, DTX-022 at

0006 (2:4-16).)  To the extent that this testimony addresses content that is not in the Arner

reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it

something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant

to FRE 402 and 403.

**Paragraph 41:**  Dr. Arner will testify that because Arner describes using a server to
perform much of the processing of web services functionality, little processing burden is put on
the client-side mobile device.

**Responses and Objections to Paragraph 41:**  This testimony is at best cumulative to

what is provided in the Arner reference and is therefore unnecessary.  (*See* Ex. 5, DTX-022 at

0005-0006 (1:30-2:16).)  To the extent that this testimony addresses content that is not in the

Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't

make it something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded

pursuant to FRE 402 and 403.

**Paragraph 42:**  Dr. Arner will also testify that prior to August 31, 2007, there were
many types of mobile devices running different operating systems with different supported
features. Dr. Arner will testify that as he was developing Arner, he considered the fact that if a
developer wanted to write an application for all of them, the developer would need to be familiar
with the different platforms, understand how they each operate, and write different sets of
application code for each device platform.

**Responses and Objections to Paragraph 42:**  This paragraph appears to be expert

testimony allegedly from the perspective of the POSA pertaining to the state of the art at the time

of the invention of the '755 patent and is therefore inappropriate.  To the extent that this

testimony relates to problems that are already addressed in the Arner reference, moreover, the

testimony is at best cumulative.  Ultimately, the "patent is whatever the patent is" and Dr. Arner

"talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  The proffered

testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 43:**  Dr. Arner will testify that the tools and techniques he developed and described in Arner reduce this development burden by allowing a developer to create a single application, which will work on the full range of supported device platforms. This reduces the skill and time necessary to develop applications for use across a broad range of mobile devices and minimizes the efforts required to maintain and update the application code if additional functionality is later desired. Dr. Arner will testify that one of his goals was to ensure that an application could be deployed on a variety of mobile devices and desktop computers with minimal effort.

**Responses and Objections to Paragraph 43:**  The proffered testimony in this paragraph makes broad statements that do not appear in the reference, including statement that the Arner reference will enable creation of "a single application, which will work on the full range of supported device platforms."  Dr. Arner's statement is overbroad and ambiguous because he does not identify what "the full range of supported device platforms," and no such language appears in the Arner reference.  To the extent that this testimony relates to problems that are already addressed in the Arner reference, moreover, the testimony is at best cumulative. Ultimately, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 44:**  Dr. Arner will testify that the IDE tool described in Arner provides the developer with four different views to help the developer see and customize various aspects of the application. Dr. Arner will testify that he designed the IDE to provide different views because his goal was to provide additional flexibility with respect to the skill set of the developer, but that not every view needed to be used to develop every application.

**Responses and Objections to Paragraph 44:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  (*See* Ex. 5, DTX-022 at 0048-0050.)  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it

something else." (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 45:**  Dr. Arner will testify that by August 31, 2007, many mobile devices used Wireless Access Protocol ("WAP") browsers to access the internet. Dr. Arner will testify that he believed mobile applications implemented using WAP browsers had some limitations, which the disclosures of Arner are designed to address and overcome.

**Responses and Objections to Paragraph 45:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  (*See* Ex. 5, DTX-022 at 0008-0009.)  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 46:**  Dr. Arner will further testify that he considered it challenging to make applications for phones with appealing layouts and designs, because of the phones' limited screen sizes. Dr. Arner will testify that the functionality and tools described in Arner were designed to allow developers to build applications for mobile devices and for devices with larger screens. Dr. Arner will testify that the functionality and tools described in Arner were also designed to address the problem of operating system divergence, both between mobile and desktop devices, and among the various types of mobile devices.

**Responses and Objections to Paragraph 46:**  It appears that the testimony in this paragraph is an attempt to improperly expand the scope of the Arner reference, as "limited screen sizes," or screen size in general, is not a focus of the disclosures of the Arner reference. Moreover, while operating systems are referenced in Arner, the concept of "operating system divergence" is not discussed anywhere in the reference.  To the extent that the Arner reference does make any disclosures that are relevant to these concepts, moreover, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.)  Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 47:**  Dr. Arner will testify that his goal was to design tools that could be used to make a single application for a variety of devices with limited memory and varied supported features. Dr. Arner will testify that the functionality and tools described in Arner can be used to create a single application for all devices, but that when the application is sent to a specific device, any code that is not needed by a particular device is stripped out, to minimize bandwidth requirements for sending the application and storage requirements for storing the application, in view of the limited bandwidth and memory of mobile devices at the time.

**Responses and Objections to Paragraph 47:**  In this paragraph, Dr. Arner proffers

testimony that appears to extend beyond the scope of the Arner reference and Mr. Schmandt's

obviousness theories.  Mr. Schmandt did not argue that the Arner reference teaches that "when

the application is sent to a specific device, any code that is not needed by a particular device is

stripped out, to minimize bandwidth requirements for sending the application and storage

requirements for storing the application, in view of the limited bandwidth and memory of mobile

devices at the time."  Shopify does not identify relevant disclosures of Arner that discuss such

capabilities, let alone information in Mr. Schmandt's opening or reply expert reports that relies

on any such disclosures in the expert reports.  Thus, to the extent that any such disclosures exist,

Shopify is using Dr. Arner to expand its obviousness theories and inject new arguments and

characterizations about Arner into the proceeding to which Express Mobile's expert, Dr.

Almeroth, could not respond during expert discovery.  Dr. Arner's proffered testimony is

irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony

should be excluded pursuant to FRE 402 and 403.

**Paragraph 48:**  Dr. Arner will testify that in Arner, the application is an XML file, although that is an exemplary format. Dr. Arner will testify that XML met his goal of providing a platform-independent application, which was important because it meant that one application could be developed that would run on a variety of different mobile device platforms (provided the mobile devices included the correct application player). Dr. Arner will testify that the goal of his disclosures in Arner was to create a single application that was independent of device platform, but which could be optimized to specific platforms based on supported features.

**Responses and Objections to Paragraph 48:**  In this paragraph, Dr. Arner proffers testimony that appears to extend beyond the scope of the Arner reference and Mr. Schmandt's obviousness theories, and that proffers expert testimony.  The use of language like "platform-independent application" is a transparent attempt to apply the Court's claim construction of device-independent code to the Application, since "device-independent code" has been construed as "code that is not specific to the operating system, programming language, or platform of a device."  (D.I. 142 at 2.)  Moreover, Mr. Schmandt did not argue that the Arner reference teaches that the Arner reference's goal was to "create a single application that was independent of device platform, but which could be optimized to specific platforms based on supported features." Shopify does not identify relevant disclosures of Arner that discuss such capabilities, let alone information in Mr. Schmandt's opening or reply expert reports that relies on any such disclosures in the expert reports.  Thus, to the extent that any such disclosures exist, Shopify is using Dr. Arner to expand its obviousness theories and inject new arguments and characterizations about Arner into the proceeding to which Express Mobile's expert, Dr. Almeroth, could not respond during expert discovery.  Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 49:**  Dr. Arner will further testify that the application could include within the XML file, script as well. Dr. Arner will testify that completed XML applications were stored in a database on the server.

**Responses and Objections to Paragraph 49:**  In this paragraph, Dr. Arner proffers testimony that appears to extend beyond the scope of the Arner reference and Mr. Schmandt's obviousness theories, and that proffers expert testimony.  Mr. Schmandt did not argue that the Arner reference teaches that the application could include "script as well" as XML.  Shopify

does not identify relevant disclosures of Arner that discuss such capabilities, let alone information in Mr. Schmandt's opening or reply expert reports that relies on any such disclosures for its obviousness theories. Indeed, Mr. Schmandt does not assert or argue that the XML in Arner contains "script" a single time, or make any obviousness arguments based on such a theory. Thus, to the extent that any such disclosures exist, Shopify is using Dr. Arner to expand its obviousness theories and inject new arguments and characterizations about Arner into the proceeding to which Express Mobile's expert, Dr. Almeroth, could not respond during expert discovery. This testimony is therefore improper and should be excluded. Moreover, to the extent that this paragraph includes testimony pertaining to the application including XML that is stored in an "application database," the testimony is cumulative to what is provided in the Arner reference and is therefore unnecessary. To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.) Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial. The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 50:** Dr. Arner will testify that in Arner, to run an application the user's device must have a separate application player that is specific to the device's platform. Only application players authorized to run a given application are permitted to access the application on the server and download it to the device. Dr. Arner will testify that this design helped increase security by only allowing authorized application players access to applications they were permitted to access.

**Responses and Objections to Paragraph 50:** The testimony proffered in this paragraph attempts to use Dr. Arner to render expert testimony that seeks to apply the teachings of Arner to construed terms or claim language of the '755, '287, and '044 patent. For example, it characterizes Arner as teaching a "**separate** application player that is **specific to the device's platform**." The "application" and "player" constructions entered by the Court require that the

"application" and "player" to be codes that are "**separate from**" each other, and the "device

dependent code" construction entered by the court includes language indicating that the player

code must be "**specific to the . . . platform of a device**."  (D.I. 142 at 2 (emphasis added).)

Therefore, Shopify is attempting to use Dr. Arner to backdoor expert opinions based on the claim

constructions at issue in this case, which is improper under Rule 703.  Ultimately, these

characterizations should be reserved for Shopify's expert, Mr. Schmandt, to the extent they are

based on statements that were properly tendered in his expert reports during expert discovery.

This reinforces that, yet again, Dr. Arner's proposed testimony is improper.

Moreover, to the extent Shopify asserts that this testimony does not attempt to implicitly

apply the teachings of Arner to the claim language, this testimony is at best cumulative to what is

provided in the Arner reference and is therefore unnecessary.  (*See* Ex. 5, DTX-022 at 0008-

0009.)  Ultimately, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't

make it something else."  (D.I. 342 (PTC) at 23.)  Dr. Arner's proffered testimony is irrelevant,

untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be

excluded pursuant to FRE 402 and 403.

**Paragraph 51:**  Dr. Arner will testify that in Arner, there are different versions of the
application player for different operating systems. Dr. Arner will testify that the motivation
behind this design was to easily develop rich internet applications that could be used with a
variety of devices with different platforms, i.e. the device player worries about the device's
platform so the application can remain platform independent. Dr. Arner will testify that the use
of an application player rather than attempting to run applications directly on the client device
provided platform independence for the application, enabled functionality even when offline, and
abbreviated the length of the application certification process.

**Responses and Objections to Paragraph 51:**  This testimony is at best cumulative to

what is provided in the Arner reference and is therefore unnecessary.  (*See, e.g.*, Ex. 5, DTX-022

at 0040 ("The Player worries about platform, so the application doesn't need to.").)  To the

extent that this testimony addresses content that is not in the Arner reference, the "patent is

whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.) The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 52:** Dr. Arner will testify that Arner does not limit the device platforms for which players might be developed. Dr. Arner will testify that one of the described embodiments of the application player is an application player written in C, which is executed directly by the operating system such as Windows CE. Dr. Arner will testify that another described embodiment used an application player written in C# that was executed by a managed code environment such as Compact.NET.

**Responses and Objections to Paragraph 52:** This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary. (*See, e.g.*, Ex. 5, DTX-022 at 0011 (7:21-26).) The application players referenced in this proffered testimony are also contained within Mr. Schmandt's expert report (*see* Ex. 4, Schmandt Opening Report ¶¶ 1118, 1148, 1161, 1185), further underscoring the unnecessary duplication and that Dr. Arner's proffer is once again wading into testimony that is more pertinent to Shopify's expert. To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.) The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 53:** Dr. Arner will testify that in Arner, one of the tools used in development of the applications was a "Win32" client that allowed developers to test the functionality of any created application on a desktop, before making the application publicly available. Dr. Arner will testify that this testing functionality was intended to facilitate quality checks and further development without needing to release the application to a target device.

**Responses and Objections to Paragraph 53:** This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary because the details of the "Win32" client are explained in the reference, and are also addressed by Mr. Schmandt. (*See, e.g.*, Ex. 5, DTX-022 at 0044, 0089-0090.) To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking

34

about it doesn't make it something else." (D.I. 342 (PTC) at 23.) The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 54:** Dr. Arner will testify that the application player encapsulates platform-dependent functionality that would otherwise have needed to be part of a natively running application. Dr. Arner will testify that the application player is responsible for interfacing with device drivers, accessing peripheral devices, requesting functionality from the server through XML messages embedded in SOAP requests, and interpreting any XML messages it receives embedded in SOAP responses from the server. Dr. Arner will testify that this design was intended to help meet the goals of increased security, enabling offline access, and providing platform independence for the applications.

**Responses and Objections to Paragraph 54:** This testimony appears to be an attempt to use Dr. Arner's testimony to provide expert testimony insofar as it characterizes the application player as "encapsulat[ing] platform-dependent functionality," which is pertinent to the Court's construction of device-dependent code. To the extent that the application player has certain functionalities, those functionalities are described in the Arner reference, and Dr. Arner's proposed testimony would be at best cumulative to what is provided in the Arner reference to the extent that the testimony is consistent with what is described in the reference. (*See, e.g.*, Ex. 5, DTX-022 at 0022-0023 (7:21-8:12).) To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I. 342 (PTC) at 23.) Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial. The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 55:** Dr. Arner will testify that one of the benefits having an application player that executes an application (rather than an application that is executed directly by the device processor) is that it allows for smaller applications and lower bandwidth requirements. More specifically, Dr. Arner will testify that the applications developed using the disclosures of Arner are at least six times smaller than a typical browser application and the network traffic generated by a web service call is approximately twenty times smaller than that of a typical web service call via web interfaces. This helped meet his goal of reducing computing burdens on the mobile device.

**Responses and Objections to Paragraph 55:**  The proffered testimony in this paragraph appears to be yet another attempt to expand or redefine the scope of the Arner reference. Specifically, this testimony attempts to distinguish between "having an application player that executes an application" and "an application that is executed directly by the device processor," even though the Arner reference itself does not make such a statement.  Shopify provides no citation to the Arner reference that discusses the role of a processor in executing the application. Moreover, the Arner reference repeatedly says that "[a] RoamData application is an XML document designed to display in the Roam application player but to execute on the Roam server," rather than on the device or on the device processor.  (Ex. 5, DTX-022 at 0046, 0053.) Dr. Arner's attempt to recast and reframe these statements in his proffer, and also during his deposition, underscoring his efforts to redefine the Arner reference.  (Ex. 2, Arner December 8, 2021 Dep. Tr. at 161:21-163:8 (stating that this statement in the reference is "simply mistaken").)  As this Court has admonished, "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)   Finally, to the extent that Dr. Arner proffers testimony about the size of the application player, Dr. Arner's testimony is at best cumulative to statements in the Arner reference and not necessary, and the reference again says what the reference says.  (*See* Ex. 5, DTX-022 at 0022 (29:24-28) ("The size of the application player 1110 is at least six times smaller than a typical browser application, such as Internet Explorer and the network traffic generated by a web service call generated by the application player 1110 is approximately twenty times smaller than that of a typical web service call via web interfaces such as the one provided by StrikeIron.").)  Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 56:**  Dr. Arner will testify that one of his goals was to create applications for mobile devices that provided enhanced security since mobile devices are inherently less controlled than a desktop environment.

**Responses and Objections to Paragraph 56:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  (*See, e.g.*, Ex. 5, DTX-022 at 0006 (2:13-16).)  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 57:**  Dr. Arner will testify that in his experience, if a company wanted to create a program for a mobile device that processed payments and that ran natively on a device, the device manufacturer would need to certify it. Dr. Arner will testify that he considered it challenging to certify applications that included financial components, e.g. for processing payment, with device manufacturers.

**Responses and Objections to Paragraph 57:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  (*See, e.g.*, Ex. 5, DTX-022 at 0006 (2:13-16).)  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 58:**  Dr. Arner will testify that one of his objectives in developing Arner was to isolate the payment processing parts of the application so that it could be certified separately from other parts of the application. Dr. Arner will testify that her referred to this in Arner as the "application player."

**Responses and Objections to Paragraph 58:**  This proffered testimony is an inappropriate attempt to recast the meaning of the "application player" disclosed in the Arner reference.  Moreover, the Arner reference does not appear to discuss certifying "parts" of an application, nor is this a concept discussed by Shopify's expert.  Instead, the reference discusses

certifying application players generally.  (*See* Ex. 5, DTX-022 at 0006 (2:26-27), 0009 (5:14-16).)  These improper attempts to redefine the meaning of the Arner reference should not be permitted. Ultimately, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 59:**  Dr. Arner will testify that the functionality and tools described in Arner allow for the development of applications that include and interact with remote web service functionality via the user's mobile device. Dr. Arner will testify that the use of an intermediary server was decided upon to provide better security than if the device communicated directly with the third-party web services. Dr. Arner will testify that the single intermediary provides web service security, web service access control, device access control and authentication, link security, auditing, and granularity of access control.

**Responses and Objections to Paragraph 59:**  The statement that "the use of an intermediary server was decided upon to provide better security than if the device communicated directly with the third-party web services" is not a statement that appears in the Arner reference and appears to be an improper attempt by Dr. Arner to expand his testimony beyond the four corners of the Arner reference.  With regard to the other statement with regard to what the "single intermediary provides," the testimony is cumulative to what is provided in the Arner reference and is therefore unnecessary.  (*See, e.g.*, Ex. 5, DTX-022 at 0009 (5:13-26).)  To the extent that this testimony addresses content that is not in the Arner reference, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 60:**  Dr. Arner will testify that web services can be hosted by third parties on their own servers, but that the intermediary server itself is a web service too and directly

38

communicates with the application player on the user's device. Dr. Arner will testify that the functionality of this intermediary server includes receiving parameters from a device and either processing those parameters on the intermediary server web service (e.g., if the application player requests available RIAs), or forwarding those parameters as received to a third-party web service if the web service is a third-party web service. Dr. Arner will testify that SOAP messages received by the intermediary server that were typically passed back to remote devices were received by the intermediary to ensure that only authorized users on authorized client devices could access the functionality provided by a given application. Dr. Arner will testify that this design helped meet the goal of better security and better context-accuracy.

**Responses and Objections to Paragraph 60:** The testimony in this paragraph is a

blatant attempt to use Dr. Arner's testimony to improperly expand Shopify's invalidity

arguments and recast the Arner reference in a manner that is not consistent with Mr. Schmandt's

arguments. Specifically, Dr. Arner's testimony about an "intermediary server web service" is a

new argument that was not addressed a single time by Mr. Schmandt, Shopify's expert. Indeed,

Mr. Schmandt recognized that "Arner may use an intermediary server in mediating

communications with web services," and never characterized the intermediary server itself as a

web service. (*See* Ex. 6, Schmandt Reply ¶ 1077.) The phrase "intermediary server web

service" does not appear in the Arner reference, and Dr. Arner's attempt to cast the intermediary

server as a web service appears to be an attempt to equate any such web service as falling within

the scope of the claims of the '755, '287, and '044 patents, which is quintessential expert

analysis. To the extent that the proffered testimony in this paragraph makes other

characterizations about the intermediary server and its role in the Arner system, the "patent is

whatever the patent is" and Dr. Arner "talking about it doesn't make it something else." (D.I.

342 (PTC) at 23.) Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert

opinion and highly prejudicial. The proffered testimony should be excluded pursuant to FRE

402 and 403.

**Paragraph 61:** Dr. Arner will testify that he was motivated to use "Global Unique Identifiers" (GUIDs) instead of the URLs in the application to specify the web service address to

provide additional security benefits. Additionally, Dr. Arner will testify that he wanted to associate the web service address with a unique GUID so that different functionalities could have the same name for different web services, but the correct web service could be identified by its GUID.

**Responses and Objections to Paragraph 61:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  The role of GUIDs in the invention is discussed throughout the Arner reference, and Dr. Arner should not be permitted to expound beyond what is disclosed in the reference, which he appears to attempt to do in this paragraph of proposed testimony.  (*See, e.g.*, Ex. 5, DTX-022 at 0013, 0015-0017, 0021, 0029, 0031.) Ultimately, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 62:** Dr. Arner will testify that in Arner, the URL is replaced with a GUID in the application when the application is published to the server. Dr. Arner will also testify that when the mobile device sends a request for web services to the intermediary server, the GUID is converted back into a URL by the intermediary server, and then the intermediary server forwards the request on to the web service.

**Responses and Objections to Paragraph 62:**  This testimony is at best cumulative to what is provided in the Arner reference and is therefore unnecessary.  The role of GUIDs in the invention is discussed throughout the Arner reference, and Dr. Arner should not be permitted to expound beyond what is disclosed in the reference, which he appears to attempt to do in this paragraph of proposed testimony.  (*See, e.g.*, Ex. 5, DTX-022 at 0013, 0015-0017, 0021, 0029, 0031.)  Ultimately, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 63:**  Dr. Arner will testify that without the access control provided by the intermediary server, all users would have equal access to all web services. Dr. Arner will testify

that he viewed unmediated access as undesirable for business uses as it would allow for unrestricted public information portals.

**Responses and Objections to Paragraph 63:**  This proposed testimony appears to go beyond the scope of what appears in the Arner reference.  His proffered testimony regarding access control appears to be untimely expert opinion based on undisclosed knowledge regarding the scope and content of the prior art.  Neither the Arner reference nor Dr. Arner's proffer addresses whether there might be alternative ways to secure or mediate access to web services aside from the solution disclosed in the Arner reference.  Ultimately, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 64:**  Dr. Arner will testify that he made certain design choices in Arner. He will testify that in addition to a GUID, in Arner the request from the mobile device for web services includes specific parameters expected by the web service. Dr. Arner will explain that the GUID is separate from these parameters and identifies the specific web service being requested. Dr. Arner will testify that web service parameters are the parameters expected by the web service (based on the definitions in the WSDL file for that web service). Dr. Arner will testify that these parameters are sent from the mobile device to the web service (through the intermediary server) and are not modified by the intermediary server or any other server along the way.

**Responses and Objections to Paragraph 64:**  The proffered testimony in this paragraph is an improper attempt to recharacterize the Arner reference and provide detail beyond that disclosed in the reference.  Once again, Shopify provides no citations to support the statements in this paragraph.  Moreover, the testimony in this paragraph is vague because it loosely and repeatedly uses the word "parameters" without clarifying what the parameters are, how they are disclosed in the reference, and how they allegedly relate to web services.  Ultimately, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)  Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert

opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 65:**  Dr. Arner will also testify that to access web services from a client device using the functionality and tools described in Arner, the application player would send a GUID as well as relevant parameters to the intermediary server, the intermediary server would use the GUID to ensure the application player was authorized to access to the requested web service, and if so, the intermediary server would pass the parameters received from the device on to the requested web service.

**Responses and Objections to Paragraph 65:**  Express Mobile incorporates its responses and objections to paragraphs 61, 62, and 64 of Dr. Arner's testimony, which also address the role that GUIDs play in the context of the Arner reference, rendering this testimony cumulative and unnecessary.  Express Mobile also repeats its concern about the vagueness of the word "parameters," and the fact that this is another attempt by Shopify to use Dr. Arner to recharacterize the Arner reference.  Ultimately, the "patent is whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I. 342 (PTC) at 23.)   Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE 402 and 403.

**Paragraph 66:**  Dr. Arner will further testify that the web service then provides a response to the intermediary server, which includes response parameters, and this response is sent by the intermediary server to the application player on the mobile device. After the application player receives this response, it interprets the response, including the parameters, and displays any information on the screen of the mobile device. Dr. Arner will testify that this design ensured that only application players authorized to access a given web service would be given access, and only application players authorized to receive information would be passed that information.

**Responses and Objections to Paragraph 66:**  Express Mobile incorporates its responses and objections to paragraphs 64 and 65 of Dr. Arner's testimony, which also address the role that "parameters" play in the context of the Arner's system.  Express Mobile also repeats its concern about the vagueness of the word "parameters," and the fact that this is another attempt by

Shopify to use Dr. Arner to recharacterize the Arner reference.  Ultimately, the "patent is

whatever the patent is" and Dr. Arner "talking about it doesn't make it something else."  (D.I.

342 (PTC) at 23.)   Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert

opinion and highly prejudicial.  The proffered testimony should be excluded pursuant to FRE

402 and 403.

**Paragraph 67:**  Dr. Almeroth, Express Mobile's expert, opines that "the creators of Arner did not consider or believe [certain] functionality was necessary." Almeroth Reb. Rpt. ¶ 900 (Oct. 7, 2020). Dr. Arner will testify as to what functionality he considered or believed to be necessary, and where that is reflected in Arner. Specifically, Dr. Arner will testify that he believed storing applications and their associated settings, including information about application components and other information, in a database was considered useful and is disclosed in Arner.

**Responses and Objections to Paragraph 67:**  Omitting the context of Dr. Almeroth's

report, Shopify improperly attempts to use a stray statement from Dr. Almeroth to justify

improper expert testimony from Dr. Arner.  Dr. Almeroth stated that "[t]he fact that Arner

contained database functionality for applications ***and not for user selected settings of UI***

***components*** underscores that the creators of Arner did not consider or believe that such

functionality was necessary."  (Ex. 7, Almeroth Rebuttal ¶ 900 (emphasis added).)  Mr.

Schmandt, Shopify's expert, did not dispute that Arner does not disclose database storage of user

selected settings (as opposed to complete applications), and merely argued for obviousness of

such implementations.  (*See* Ex. 4, Schmandt Opening Report ¶ 1142.)  Based on this, Dr. Arner

seeks an unfettered opportunity to broadly state his expert opinions as "to what functionality he

considered or believed to be necessary, and where that is reflected in Arner," without any

citation to Arner.  He also states (again without citation) that he will testify that "he believed

storing applications and their associated settings, including information about application

components and other information, in a database was considered useful and is disclosed in

Arner." This testimony is both incorrect and an improper attempt to buttress Mr. Schmandt's obviousness testimony. Shopify's attempt to use Dr. Almeroth's *proper* and timely expert opinion to open the door to improper expert testimony should be rejected once again. Dr. Almeroth has had no opportunity to respond to Dr. Arner's new opinions. Dr. Arner's proffered testimony is irrelevant, untimely, undisclosed expert opinion and highly prejudicial. The proffered testimony should be excluded pursuant to FRE 402 and 403.

Dated: May 20, 2022

DEVLIN LAW FIRM LLC

*/s/ Timothy Devlin*
Timothy Devlin (No. 4241)
tdevlin@devlinlawfirm.com
Robert Kiddie (admitted *pro hac vice*)
Texas Bar No. 24060092
rkiddie@devlinlawfirm.com
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

OF COUNSEL:

James R. Nuttall (admitted *pro hac vice*)
John L. Abramic (admitted *pro hac vice*)
Michael Dockterman (admitted *pro hac vice*)
Robert F. Kappers admitted (*pro hac vice*)
Tron Fu (admitted *pro hac vice*)
Katherine H. Johnson (admitted *pro hac vice*)
jnuttall@steptoe.com
jabramic@steptoe.com
mdocketerman@steptoe.com
rkappers@steptoe.com
tfu@steptoe.com
kjohnson@steptoe.com
STEPTOE & JOHNSON LLP
227 West Monroe, Suite 4700
Chicago, IL 60606
(312) 577-1300

Christopher A. Suarez (admitted *pro hac vice*)
csuarez@steptoe.com
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-8131

*Attorneys for Defendant/Counterclaim Plaintiff*
*Express Mobile, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that copies of the within filing were served on

counsel of record via CM/ECF mail on May 20, 2022.

*/s/ Timothy Devlin*
Timothy Devlin