**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SHOPIFY INC. AND SHOPIFY (USA), INC., | ) | |
| | ) | |
| Plaintiffs/Counterclaim Defendants, | ) | |
| | ) | Civil Action No. 19-cv-00439-RGA |
| v. | ) | |
| | ) | Honorable Richard G. Andrews |
| EXPRESS MOBILE, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |


**DEFENDANT AND COUNTER-CLAIM PLAINTIFF**
**EXPRESS MOBILE, INC.'S RESPONSES AND OBJECTIONS TO**
**SHOPIFY INC. AND SHOPIFY (USA), INC.'S PROFFER OF**
**FACTUAL TESTIMONY TO BE PROVIDED BY PRIOR ARTIST,**
**MR. CAMERON BATEMAN**

Pursuant to the Court's order during the status conference on January 28, 2022, and in furtherance of Express Mobile's motion *in limine* to exclude the testimony of Mr. Cameron Bateman,  Express Mobile, Inc. ("Express Mobile") hereby provides its responses and objections to Shopify Inc. and Shopify (USA), Inc.'s ("Shopify's") proffer of factual testimony to be provided by prior artist, Mr. Cameron Bateman.

Express Mobile's review of the submitted proffer reinforces that Mr. Cameron Bateman should be precluded from testifying at trial, consistent with Express Mobile's pending request to exclude his testimony.  Shopify disclosed Mr. Bateman more than a year late and in this Court's words, "Shopify dropped the ball on the disclosure," and the "disclosure on September 24th, 2021—approximately a year after both fact and expert discovery closed in this case—"was a surprise."  (Ex. 1, Jan. 28, 2022 Tr. at 8:3-4, 9:11-12; D.I. 149, 193, 194.).  In its initial motion to exclude Mr. Bateman (before it had the benefit of Shopify proffer), Express Mobile explained that Shopify would use Mr. Bateman to "patch holes in Shopify's invalidity case and backfill its expert's invalidity opinions with testimony and materials that were not timely disclosed during fact or expert discovery."  (D.I. 351 at 1.)  Shopify's proffer now confirms that Express Mobile's earlier suspicions were correct, and that Mr. Bateman will attempt to offer irrelevant and prejudicial testimony that extends beyond the prior art at issue and invalidity theories in Shopify's expert reports.  That is problematic because, as this Court has already explained, the prior art witnesses are "not terribly important because the question, generally speaking, . . . is what does a person of ordinary skill in the art understand from whatever the piece of prior art is. And if the person who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11:8-13.)

The Court rightfully expressed "concern[]" during the latest hearing that despite

"Shopify's representations of the modestness" of Mr. Bateman's testimony, the proposed

testimony in the proffer would extend well beyond the disclosures in the prior art reference.  A

review of Mr. Bateman's proffer confirms not only that his testimony extends beyond the words

of the documents that describe Version 4.1 of the BlackBerry MDS Studio system, but also

extends beyond Mr. Schmandt's (Shopify's expert's) understanding of the reference, in an

apparent attempt to backfill deficiencies in the prior art system and in its obviousness case more

generally.  Additionally, Mr. Bateman's proposed testimony delves into expert testimony, the

perspective of the POSA, and into issues of claim construction that are outside the scope of his

alleged "fact" testimony and not permitted by Shopify's own cases.[1]  Ultimately, Mr. Bateman's

testimony is irrelevant and unnecessary because the only prior art asserted is Version 4.1 of the

BlackBerry MDS Studio System—nothing else.

Additionally, Shopify overstates the significance and relevance of Mr. Bateman's

personal knowledge.  As Mr. Bateman admitted during his deposition, he left the employment of

Research in Motion (RIM) in February 2006, as the proffer concedes. (*See* Bateman Proffer ¶ 4.)

This was approximately one year before Version 4.1 of BlackBerry MDS Studio was released,

and before numerous documents that Shopify relies on in its exhibit list were copyrighted and

published.  (*See, e.g.*, Ex. 2, Bateman March 30, 2022 Dep. Tr. at 38:5-39:16 (Bateman

---

[1] Shopify's half-page-long footnote 4 in Mr. Bateman's proffer purports to advance various cases that permit his testimony.  But the cases actually confirm that Mr. Bateman is not permitted to furnish expert testimony or compare the prior art to the patent claims or the claim language— precisely what his 15 page proffer repeatedly does here.  *See CertusView Techs. v. S&N Locating Servs.*, 2016 WL 6915303, at *1 (E.D. Va. March 7, 2016) ("[A]s Mr. Tucker has not been identified as an expert witness, he may not provide opinion testimony regarding the claims at issue."); *Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 WL 1330002, at *3-*4 (N.D. Cal. May 15, 2006) (striking testimony that attempts to compare prior art to the patent because such testimony "requires specialized knowledge"); *accord* 1340 (Fed. Cir. 2010) (permitting district court to "limit[] inventor testimony to factual testimony that did not require expert opinion").

2

admitting in reference to DTX-081 that he "wouldn't be able to speak to any documents that were created after [his] departure [from BlackBerry] in February 2006").)  Indeed, Mr. Bateman conceded that he "[did]n't know for sure what 4.1 . . . mapped to what [he] worked on," and that he "[did]n't know how what [he] worked on mapped to any external version that was put out" by BlackBerry." (Ex. 3, Bateman September 2, 2020 Dep. Tr. at 120:11-21.)  Therefore, Mr. Bateman does not have personal knowledge of the specific documents corresponding to the version of BlackBerry MDS Studio version at issue in this case.  And, in any event, the documents and exhibits pertaining to the reference speak for themselves and define the contours of the prior art system, consistent with the Court's previous admonitions to this effect.  Mr. Bateman's proffered testimony is irrelevant, untimely, improper expert testimony and highly prejudicial.

Therefore, Mr. Bateman should be excluded from testifying at trial.

## GENERAL OBJECTIONS

Express Mobile objects to Mr. Bateman's proffer testimony as being irrelevant and of little probative value insofar as it extends beyond the four corners of the prior art system, Version 4.1 of the BlackBerry MDS Studio, at issue in this case.  Mr. Bateman's testimony seeks to elaborate and expound upon alleged details that are not part of the documents of record that purport to describe the system, and thus irrelevant for purposes of the obviousness arguments that are the only basis for discussing the reference in the case.  Pursuant to Federal Rule of Evidence 403, the probative value of Mr. Bateman's testimony is outweighed by the danger of unfair prejudice from admitting testimony that is beyond the scope of the only pertinent evidence of record that describes Version 4.1 of the BlackBerry MDS Studio system.

Express Mobile also objects to the proffer as being improperly vague to the extent that it

does not provide foundation for most of the testimony that is being proffered.  In particular, apart from generic references to BlackBerry MDS Studio Developer Guides (DTX-081, DTX-111) and a Setup.exe file (DTX-105), the proffer does not provide any citations to any portions of any disclosures relating specifically to Version 4.1 of the BlackBerry MDS Studio system that Mr. Bateman intends to use in connection with his testimony.  This has forced Express Mobile to itself evaluate and compare Mr. Bateman's proffered testimony to the evidence of record pertaining to Version 4.1 of the BlackBerry MDS Studio system, and has placed a significant burden on Express Mobile in its effort to respond and object to Mr. Bateman's proffer.  Express Mobile's review of Mr. Bateman's proposed testimony and comparison to the exhibits of record pertaining to Version 4.1 of BlackBerry MDS Studio confirms that much of the testimony that Shopify seeks to elicit extends beyond the scope of the evidence and exhibits of record pertaining to Version 4.1 of the BlackBerry MDS Studio system.

Express Mobile also objects as a general matter to Mr. Bateman's proffer testimony as being beyond the scope of proper lay witness opinion testimony under Federal Rule of Evidence Rule 701, which must be solely "based on the witness's perception" and "not based on scientific, technical, or specialized knowledge within the scope of Rule 702."  Numerous aspects of Mr. Bateman's proffered testimony reflect expert opinion based on Mr. Bateman's specialized knowledge that would normally be within the province of Federal Rule of Evidence 702.  Indeed, the proffer attempts to qualify Mr. Bateman as a person of ordinary skill ("POSA") (*see* Bateman Proffer ¶ 4) and then has Mr. Bateman associate various alleged teachings of the BlackBerry MDS Studio system with claim language and limitations recited within the '755, '287, and '044 patents.  While the effort to use Mr. Bateman to supply expert testimony is not expressly admitted in Mr. Bateman's proffer, it is plainly what Shopify is attempting to do as explained in

the paragraph-by-paragraph analysis below, and as confirmed by the structure of the proffer, which reads much like an expert report and repeatedly renders expert testimony.  Mr. Bateman was never disclosed as an expert in this case during expert discovery and, again, was not even disclosed as an alleged fact witness for more than a year after fact discovery closed.  Shopify's attempt to submit untimely and improper expert testimony to rebut Express Mobile's expert opinions now is clearly improper and highly prejudicial as Express Mobile has followed the Court's scheduling order and has no opportunity to respond to these new alleged opinions and theories that attempt to fill holes in Shopify's invalidity arguments.

To the extent that Mr. Bateman's proffer testimony does address issues within exhibits that describe Version 4.1 of the BlackBerry MDS Studio system or other issues that are within the scope of Mr. Schmandt's expert reports, Express Mobile further objects to his proffered testimony under Federal Rule of Evidence 403 because that testimony's probative value is substantially outweighed by the cumulative nature of the evidence, when that same evidence can be addressed by Mr. Schmandt, Shopify's expert.

Shopify insinuates that Express Mobile's opportunity to depose Mr. Bateman mitigates any prejudice that has accrued to Express Mobile.  But that is not true.  During his deposition that occurred after the Court ordered Shopify to submit this proffer, Mr. Bateman had not even been told by counsel that he was going to submit a proffer in this case, and he had not spent any time preparing his proffer in advance of the deposition.  (*See* Ex. 2, Bateman March 30, 2022 Dep. Tr. at 26:9-27:1.)  Therefore, Mr. Bateman could not speak to the contents of his proffer, and Express Mobile could not probe the metes and bounds of the issues that were ultimately addressed in the proffer.

Moreover, Mr. Bateman's personal knowledge of the BlackBerry MDS Studio Version

4.1 is relatively limited. He conceded that there were three components to the product: the studio, the runtime, and the application gateway. (Ex. 3, Bateman September 2, 2020 Dep. Tr. at 15:2-9.) Mr. Bateman admitted that he only had "some involvement" with the runtime but that it was not his "main function," so he could "give just basically high level" answers. (*Id.* at 15:10-14.) Another employee, Kamen Brindusa, led the application gateway team, and Bryan Goring led the studio team. (*Id.* at 64:16-66:14.) Mr. Bateman was not focused on the runtime or application gateway. He was but one software developer on the studio team, and there were 40 to 50 developers like Mr. Bateman working on the product by the time he departed BlackBerry in February 2006. (*Id.*) Mr. Bateman also departed BlackBerry about a year before BlackBerry MDS Studio 4.1 and its corresponding documentation was released. For these reasons, Mr. Bateman's testimony is of an extremely limited probative value in this proceeding.

## SPECIFIC OBJECTIONS

Subject to the general objections stated above, which are incorporated into each individual response by reference, Express Mobile lodges specific objections to Mr. Bateman's proffer on a paragraph-by-paragraph basis, as explained below.

**Paragraph 1:** Mr. Bateman is a software engineer who was part of the team that developed the software product known as BlackBerry MDS Studio. *See, e.g.*, DTX081 & DTX111. Shopify contends that BlackBerry MDS Studio renders the asserted claims of the '755, '287, and '044 patents obvious. Mr. Bateman will testify that he was involved in the development of BlackBerry MDS Studio and will provide the jury with context about BlackBerry MDS Studio, including the features and functionality found in BlackBerry MDS Studio and its public release. Mr. Bateman will explain the key features of the systems and methods of BlackBerry MDS Studio for mobile application development, and the public availability of those features and functionalities.

**Responses and Objections to Paragraph 1:** As noted above, Mr. Bateman was a marginal "part of the team" that developed BlackBerry MDS Studio, he had limited knowledge of BlackBerry MDS Studio, and Shopify does not direct this testimony to Version 4.1 of the

product.  Indeed, Mr. Bateman conceded that he "[did]n't know for sure what 4.1 . . . mapped to what [he] worked on," and that he "[did]n't know how what [he] worked on mapped to any external version that was put out" by BlackBerry." (Ex. 3, Bateman September 2, 2020 Dep. Tr. at 120:11-21.)  The fact that "Shopify contends that BlackBerry MDS Studio renders the asserted claims of the '755, '287, and '044 patents obvious" is not relevant to a fact witnesses' testimony, and obviousness should not be discussed by a fact witness.  To the extent that Mr. Bateman will testify about "context" of BlackBerry MDS Studio, the remainder of this paragraph is vague and does not place Express Mobile on notice of the precise nature of the testimony.  For example, the paragraph states that Mr. Bateman will testify about "key features of the systems and methods of BlackBerry MDS Studio for mobile application development" and the "features and functionality found in BlackBerry MDS Studio," without identifying the documents or disclosures about BlackBerry MDS Studio Version 4.1 on which he relies.  This makes it impossible to ascertain whether the proffered testimony in this paragraph is appropriate. Moreover, as the Court explained, Mr. Bateman is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.)  To the extent Mr. Bateman seeks to testify about "the context" in an effort to expand or change the disclosure in BlackBerry MDS Studio this is improper, irrelevant, untimely expert opinion and prejudicial. The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

   **Paragraph 2:**  Mr. Bateman's testimony will be helpful to the jury in understanding what features and functionalities existed in BlackBerry MDS Studio, which will provide the jury with facts to consider and compare with expected analogous testimony from at least two of the named inventors on the Asserted Patents.

**Responses and Objections to Paragraph 2:**  Shopify states that Mr. Bateman's testimony will be helpful to the jury in understanding "what features and functionalities existed in BlackBerry MDS Studio," but Mr. Bateman's knowledge of the relevant features and functionalities is extremely limited for the reasons discussed above.  Again, this paragraph is vague insofar as it does not identify the "features and functionalities" that Mr. Bateman will discuss in his testimony.  To the extent that Shopify asserts that Mr. Bateman should be permitted to provide testimony that can be "compared with expected analogous testimony from at least two of the named inventors on the Asserted Patents," Shopify speculates on the scope of the inventors' testimony, ignores that Express Mobile's inventors were timely disclosed under the rules, and ignores that its expert's testimony can be compared to any testimony of Express Mobile's inventors.  Express Mobile's inventors are not relevant to whether Mr. Bateman's testimony should be permitted, and Shopify's effort to inject them into this issue is entirely improper.   The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 3:**  Express Mobile has not stipulated to the fact that BlackBerry MDS Studio is prior art to the Asserted Patents, *see* D.I. 324-1 at 2 (not including any facts relating to BlackBerry MDS Studio and its status as prior art), and Express Mobile has challenged on evidentiary grounds numerous documents relating to BlackBerry MDS Studio that describe the system. *See* D.I. 324-8 at 3 (objecting to each document with a "BBSHOPEXPR" bates prefix as well as additional documents related to BlackBerry MDS Studio produced by Shopify). Express Mobile also appears to take the position that certain documents do not describe features and functionalities included in the version of BlackBerry MDS Studio that Shopify is relying on as prior art. *See generally*, questions asked by Express Mobile at Mr. Bateman's depositions regarding the version of BlackBerry MDS Studio. Mr. Bateman's testimony is relevant to each of these issues. He will testify as to facts from his personal knowledge as he worked on the development of BlackBerry MDS Studio for approximately two years.

**Responses and Objections to Paragraph 3:**  Shopify's attempt to use authentication issues as a basis to permit Mr. Bateman's testimony is irrelevant and unnecessary. Express Mobile is willing to agree not to object to the authenticity of exhibits that were produced by

Research In Motion/BlackBerry that are pertinent to BlackBerry MDS Studio Version 4.1, and are referenced in the July 24, 2020 declaration from BlackBerry's Luke Stafford (DTX-117). Express Mobile is also willing to agree that BlackBerry produced documents were published no later than the copyright dates listed on the face of those documents. Express Mobile further notes that Shopify's proffer does not identify the precise set of exhibits that it seeks to authenticate or use at trial in connection with BlackBerry MDS Studio Version 4.1. Therefore, Shopify's proffer is vague as to any basis for using Mr. Bateman for further purposes of authentication. The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 4:** Mr. Bateman will identify himself as an individual residing in Alameda, California, who currently works at Oracle. Mr. Bateman will testify that he has a Bachelor's degree in computer science from the University of Waterloo, which he received in 1999. Mr. Bateman will testify he was previously employed at Research in Motion, otherwise known as "RIM" or "BlackBerry." He will testify he worked at BlackBerry for about two years, from approximately February 2004 to February 2006. Mr. Bateman will testify that his position at BlackBerry was a software engineer or software developer. Mr. Bateman will testify that he worked at BlackBerry in their Mississauga, Ontario, Canada office. Mr. Bateman will testify that for the entire time he worked at BlackBerry, he worked on the BlackBerry MDS Studio project.

**Responses and Objections to Paragraph 4:** This proffered testimony is an attempt to qualify Mr. Bateman as a person of ordinary skill (POSA) so that he can render testimony that would be relevant to an obviousness analysis, underscoring the impropriety of his proffered testimony. The paragraph also states that Mr. Bateman will testify that "he has a Bachelor's degree in computer science from the University of Waterloo," which parallels Mr. Schmandt's POSA requirement that the POSA "would be a person with a Bachelor of Science in Computer Science." (*See* Ex. 4, Schmandt Opening Report ¶ 26.) The paragraph further states that he was a software engineer or software developer for two years, which is consistent with the POSA

requirements as well.  (*Id.*)  The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 5:**  Mr. Bateman will testify that he has no connection to Shopify. He will testify that he does not own any stock in Shopify. He will testify that he has no connection to Express Mobile. He will testify that he is not being compensated for his time testifying.

**Responses and Objections to Paragraph 5:**  Express Mobile objects to this testimony to the extent that it improperly suggests that Mr. Bateman is a neutral witness.  Mr. Bateman was initially contacted by Shopify's attorneys and he has exchanged dozens of emails that resulted in at least a half dozen conversations those attorneys. (*See* Ex. 2, Bateman March 30, 2022 Dep. Tr. at 6:23-7:1, 34:20-35:12.)  Shopify's attorneys biased Mr. Bateman against Express Mobile by suggesting that Express Mobile is a nonpracticing entity and mischaracterizing the asserted patents.  (Ex. 3, Bateman September 2, 2020 Dep. Tr. at 109:14-112:25.)  Mr. Bateman also suggested that he is being compensated by Shopify for his travel time.  (*See* Ex. 2, Bateman March 30, 2022 Dep. Tr. at 6:23-7:1, 18:16-24.)  The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 6:**  Mr. Bateman will identify himself as a person who worked on the product produced by BlackBerry known as BlackBerry MDS Studio ("MDS Studio"). Mr. Bateman will testify that MDS Studio is an integrated development environment, and the purpose of it was to create mobile applications for BlackBerry devices. Mr. Bateman will testify he understands how the MDS Studio product operated because he worked on it and was involved in the creation of the product. Mr. Bateman will testify that he was involved in the design of the product.

**Responses and Objections to Paragraph 6:**  Express Mobile objects to this testimony to the extent that Mr. Bateman left the employment of Research in Motion in 2006, and therefore was not working at the company when BlackBerry MDS Studio Version 4.1, along with numerous documents pertaining to that version of BlackBerry MDS Studio, were published and released.  Additionally, even when he was employed by Research In Motion, Mr. Bateman only worked on a small portion of BlackBerry MDS Studio, and was not among the leadership or

management that was responsible for the development of BlackBerry MDS Studio Version 4.1 as a whole, as described above and in Express Mobile's responses and objections to paragraph 1 of Mr. Bateman's proffer.  For these reasons, Mr. Bateman's testimony as a general matter only bears marginal relevance to the prior art system advanced by Shopify, and his relevant personal knowledge is extremely limited, underscoring that his testimony as a general matter should be excluded.  The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 7:**  Mr. Bateman will testify that there were three components to the overall product: 1) the MDS Studio development environment; 2) a runtime environment for applications that runs on a client's BlackBerry device; and 3) the application gateway.

**Responses and Objections to Paragraph 7:**  Shopify does not identify the exhibits or documents in the record that support this characterization of BlackBerry MDS Studio Version 4.1, and this framing of BlackBerry MDS Studio as having "three components" does not even appear to be furnished by Mr. Schmandt, Shopify's expert.  Express Mobile objects to this testimony to the extent that it does not accurately reflect the disclosures of the exhibits of record that are pertinent to BlackBerry MDS Studio Version 4.1.  To the extent that this testimony is supported by exhibits in the record, it is at best cumulative and its probative value would be substantially outweighed by its prejudicial effect. As the Court explained, Mr. Bateman is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter." (Ex. 1, Jan. 28, 2022 Tr. at 11.) The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 8:**  Mr. Bateman will testify that Chris Smith was a manager of the development team that created the three components related to the MDS Studio (MDS Studio,

the Runtime Environment, and the application gateway). Mr. Bateman will testify Chris Smith
took over the position from the previous manager in 2005.

**Responses and Objections to Paragraph 8:**  Shopify does not provide any explanation
as to the relevance of this testimony, or why it is necessary to establish Chris Smith as a manager
of the BlackBerry MDS Studio development team.  Express Mobile objects to this testimony to
the extent that it will be used to introduce or address exhibits that are not relevant to the
functionality of BlackBerry MDS Studio Version 4.1, or to which Mr. Bateman lacks personal
knowledge.  Express Mobile further notes that Chris Smith's management role underscores that
Mr. Bateman played a relatively minor role in the development of BlackBerry MDS Studio, and
that his testimony is therefore of at most marginal relevance to the facts underlying BlackBerry
MDS Studio Version 4.1.  The proffered testimony is therefore irrelevant and prejudicial and
should be excluded pursuant to FRE 402 and 403.

**Paragraph 9:**  Mr. Bateman will testify that Bryan Goring was Mr. Bateman's technical
team lead on MDS Studio. Mr. Bateman will testify that Brindusa Fritsch led the team that built
the application gateway product.

**Responses and Objections to Paragraph 9:**  Shopify does not provide any explanation
as to the relevance of this testimony, or why it is necessary to establish Bryan Goring as a
technical team lead of BlackBerry MDS Studio, or why it is necessary to explain that Brindusa
Fritsch led the team that built the application gateway product.  Express Mobile objects to this
testimony to the extent that it will be used to introduce or address exhibits that are not relevant to
the functionality of BlackBerry MDS Studio Version 4.1, or to which Mr. Bateman lacks
personal knowledge.  Express Mobile further notes that Bryan Goring's and Brindusa Fritsch's
leadership roles underscore that Mr. Bateman played a relatively minor role in the development
of BlackBerry MDS Studio, and that his testimony is therefore of at most marginal relevance to

the facts underlying BlackBerry MDS Studio Version 4.1.  The proffered testimony is therefore
irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 10:** Mr. Bateman will testify that Kamen Vitanov worked on MDS Studio.
Mr. Bateman will testify that Mr. Vitanov lead the team working on the runtime environment
portion of the product.

**Responses and Objections to Paragraph 10:**  Shopify does not provide any explanation
as to the relevance of this testimony, or why it is necessary to establish Kamen Vitanov as a
technical team lead of the runtime environment portion of BlackBerry MDS Studio.  Express
Mobile objects to this testimony to the extent that it will be used to introduce or address exhibits
that are not relevant to the functionality of BlackBerry MDS Studio Version 4.1, or to which Mr.
Bateman lacks personal knowledge.  Express Mobile further notes that Bryan Goring's and
Brindusa Fritsch's leadership roles underscore that Mr. Bateman played a relatively minor role in
the development of BlackBerry MDS Studio, and that his testimony is therefore of at most
marginal relevance to the facts underlying BlackBerry MDS Studio Version 4.1.  The proffered
testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and
403.

**Paragraph 11:**  Mr. Bateman will testify that each of Chris Smith, Brindusa Fritsch,
Bryan Goring, and Kamen Vitanov, and he worked on the version of MDS Studio released in
2005.  (Footnote 6 Text: All of the individuals referenced above are referred to in documents
about which Mr. Bateman may testify and will provide the jury with additional context about the
members of the MDS Studio team.).

**Responses and Objections to Paragraph 11:** Express Mobile incorporates its responses
and objections to paragraphs 8 through 10, and reiterates that the leadership roles of Chris Smith,
Brindusa Fritsch, Bryan Goring, and Kamen Vitanov underscore that Mr. Bateman's testimony is
of marginal relevance.  Again, Shopify does not provide any explanation as to the relevance of
this testimony.  To the extent that Shopify states that these individuals are "referred to in

documents about which Mr. Bateman may testify," Shopify does not identify the documents or

how Mr. Bateman has personal knowledge of the documents in which these other individuals are

referenced.  Moreover, Shopify does not identify how Mr. Bateman can discuss "context" about

BlackBerry MDS Studio from these individuals who are not testifying or coming to trial.    The

proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to

FRE 402 and 403.

**Paragraph 12:**  Mr. Bateman will testify that he understands the roles of these people with respect to the development of MDS Studio as he worked either directly or indirectly with each of them, and they all worked with Mr. Bateman in Mississauga, Ontario, Canada.

**Responses and Objections to Paragraph 12:**  Express Mobile incorporates its responses

and objections to paragraphs 8 through 11.  Express Mobile objects to this testimony to the

extent that it suggests that Mr. Bateman has familiarity with BlackBerry MDS Studio simply

because "he worked either directly or indirectly" with various employees of BlackBerry/RIM.

That Mr. Bateman knew some of these members of management does not mean that those

individuals' personal knowledge can be imputed to Mr. Bateman.  As discussed above, Mr.

Bateman was one of dozens of software developers that worked on BlackBerry MDS Studio and

therefore played a limited role in developing BlackBerry MDS Studio, let alone Version 4.1 of

the BlackBerry MDS Studio product at issue here.  The proffered testimony is therefore

irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 13:**  Mr. Bateman will testify that MDS Studio was a powerful visual application design and assembly tool that allows for developers to quickly create rick[2] client applications for Java-based BlackBerry devices. Mr. Bateman will testify that MDS Studio allowed developers to quickly create mobile applications using drag and drop functionality.

---

[2] This appears to be a typo in Shopify's pleading that should be "rich," not "rick."

**Responses and Objections to Paragraph 13:**  This testimony is unnecessary because it is at best cumulative to disclosures that are already addressed by Mr. Schmandt, Shopify's expert, and are recited in documents that Shopify has placed on its exhibit list.  (*See* Ex. 4, Schmandt Opening Report ¶ 1044 (citing DTX-039, SHOP0021263 ("BlackBerry MDS Studio™ is a powerful visual application design and assembly tool that allows developers to quickly create rich-client applications for Java™-based BlackBerry® devices.")).)  The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 14:**  Mr. Bateman will testify that MDS Studio was an integrated development environment for use by a developer. Mr. Bateman will testify that MDS Studio was a desktop application, used to compose applications by a combination of dragging and dropping components, declaring relationships between the components, and in some cases writing small amounts of script to tie the application logic together. Mr. Bateman will testify that the studio tool would allow someone to author or create an application, and the application bundle that the studio tool created could be downloaded to a BlackBerry device by the Runtime Environment.

**Responses and Objections to Paragraph 14:**  Express Mobile objects to this testimony because it appears to be at best cumulative to what is in the record regarding BlackBerry MDS Studio Version 4.1.  To the extent that this testimony addresses content that is not in the BlackBerry MDS Studio, the Court explained that Mr. Bateman is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.) The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 15:**  Mr. Bateman will testify that when he started at BlackBerry in February 2004, MDS Studio was not yet released to the public and instead was a prototype. Mr. Bateman will testify that he worked on the first official version of MDS Studio released to the public. Mr. Bateman will testify he when he left BlackBerry, BlackBerry was on its second release of MDS

Studio. Mr. Bateman will testify that MDS Studio had been released to the public as of March 23, 2006. Mr. Bateman will testify that in 2006, he worked on demonstrations for BlackBerry partners to show at conferences.

**Responses and Objections to Paragraph 15:**  This proposed testimony underscores the marginal relevance of Mr. Bateman's testimony and illustrates that Mr. Bateman lacks sufficient foundation to discuss the public availability or details of BlackBerry MDS Studio Version 4.1. Mr. Bateman departed BlackBerry in February 2006 (*see* Bateman Proffer ¶ 4), yet the proffer indicates that "Mr. Bateman will testify that MDS Studio had been released to the public as of March 23, 2006"—after he left the company.  The proffered testimony also suggests that Mr. Bateman "worked on demonstrations for BlackBerry partners to show at conferences," but it appears that he departed before those conferences actually occurred.  Moreover, Mr. Bateman admitted in a deposition that he never personally demonstrated BlackBerry MDS Studio at conferences, and that he was not sure if others had actually given demonstrations at conferences. (Ex. 3. Bateman September 2, 2020 Dep. Tr. at 22:18-23:2.).  The proffer notes that when Mr. Bateman left BlackBerry it "was on its second release of MDS Studio," which is not necessarily equivalent to the BlackBerry MDS Studio Version 4.1 product at issue in this case and referenced in documents and exhibits dated in 2007.  Indeed, Mr. Bateman conceded that he "[did]n't know for sure what 4.1 . . . mapped to what [he] worked on," and that he "[did]n't know how what [he] worked on mapped to any external version that was put out" by BlackBerry." (Ex. 3, Bateman September 2, 2020 Dep. Tr. at 120:11-21.)  The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 16:**  Mr. Bateman will testify that he worked with a third party to integrate MDS Studio with a Lotus Domino server, which was an email server in late 2005 or early 2006. Mr. Bateman will testify that the third party had MDS Studio available on its systems and likely downloaded it from publicly-available sources prior to Mr. Bateman's work with the party. Mr.

Bateman will testify that BlackBerry's relationship with this third party was commercial in nature.

**Responses and Objections to Paragraph 16:**  The proffered testimony is unfounded speculation and irrelevant.  To the extent that Mr. Bateman worked with a third party that integrated MDS Studio with its server, it is not clear that the version downloaded in "late 2005 or early 2006" was necessarily the Version 4.1 of BlackBerry MDS Studio.  Moreover, the fact that a version of BlackBerry MDS Studio was "likely" downloaded does not establish that any version of BlackBerry MDS Studio was downloaded, let alone Version 4.1  The relevance of this testimony is marginal at best and any probative value is substantially outweighed by the cumulative and prejudicial effects of the testimony. The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 17:**  Mr. Bateman will testify that internally, the first version of MDS Studio that he worked on was referred to as version 1.0. Mr. Bateman will testify that all of the features he testifies to were found in MDS Studio denoted internally as version 1.0. Mr. Bateman will testify that if MDS Studio was marketed to the public as version 4.1 in 2005, that is the version that he worked on and knew internally as version 1.0. Mr. Bateman will testify that he believes the "4.1" branding was included because BlackBerry wanted to show continuity in the market with a separate product that used the name Mobile Data Services or possibly Mobile Data System (what Mr. Bateman knew as "MDS"). Mr. Bateman will testify that BlackBerry wanted to put MDS Studio under MDS as part of a product suite.

**Responses and Objections to Paragraph 17:**  The testimony in this paragraph is speculative, lacks foundation, and is improper opinion testimony under Rule 701.  *First*, Shopify proffers that Mr. Bateman would testify that "*if* MDS Studio was marketed to the public as version 4.1 in 2005, that is the version that he worked on and knew internally as version 1.0," but does not provide any foundation that MDS Studio was marketed to the public as version 4.1 in 2005, or explain why it is necessarily the case that version 4.1 would be identical to the software he worked on that was labeled version 1.0.  Indeed, Mr. Bateman conceded that he "[did]n't know for sure what 4.1 . . . mapped to what [he] worked on," and that he "[did]n't know how

what [he] worked on mapped to any external version that was put out" by BlackBerry." (Ex. 3, Bateman September 2, 2020 Dep. Tr. at 120:11-21.)

*Second*, Mr. Bateman states without foundation that "he **believes** the '4.1' branding was included because BlackBerry wanted to show continuity in the market," but does not state any foundational facts that substantiate his belief.  Rule 701 requires that opinion testimony is "rationally based on the witness's perception," and Mr. Bateman was not in a position to perceive the decisions of BlackBerry's marketing or product strategy.  The proffered testimony therefore lacks foundation, is irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 18:**  Mr. Bateman will testify that he understood it to be BlackBerry's regular business practice to release user guides for its products. Mr. Bateman will testify that he has no reason to believe that BlackBerry did not release user guides for the version of MDS Studio that he worked on.

**Responses and Objections to Paragraph 18:**  Express Mobile objects to this testimony because this testimony, again, does not indicate that Mr. Bateman had personal knowledge of any user guides that correspond to BlackBerry MDS Studio Version 4.1 in particular.  His testimony that "he has **no reason to believe** that BlackBerry did not release user guides for the version of MDS Studio that he worked on" is phrased in the negative and is of minimal probative value and therefore should be excluded.  In any event, as noted above, Express Mobile is willing to reach agreement that would stipulate to the authenticity of BlackBerry user guides corresponding to BlackBerry MDS Studio Version 4.1 that were produced in this case by BlackBerry/RIM.  The proffered testimony therefore lacks foundation, is irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 19:**  Mr. Bateman will testify that there was a support forum for users of MDS Studio that he remembers visiting and using, including after he left BlackBerry. Mr. Bateman will testify this forum was open to the public, including to him after he left BlackBerry.

Mr. Bateman will testify that this was a forum where members of the public who needed support relating to MDS Studio could go to ask questions of other members of the public or BlackBerry.

**Responses and Objections to Paragraph 19:**  Mr. Bateman's testimony regarding a support forum for users of MDS Studio is of marginal relevance.  This testimony is vague insofar it is not clear what exhibit or exhibits relating to a "support forum" are at issue, or whether such exhibits are even relevant to Version 4.1 of BlackBerry MDS Studio.  Moreover, it is not clear how comments from users of BlackBerry MDS Studio in a support forum are relevant to the core technical features of the prior art *system*, which is best described by the software itself along with pertinent technical manuals and documentation.  The proffered testimony therefore is irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403

**Paragraph 20:**  Mr. Bateman will testify that MDS Studio facilitated the development of component-based applications, meaning that users could create a number of different types of components that could then be manipulated and used to create an application. Mr. Bateman will testify that the use of components simplified the process of building an application so that users could often drag and drop components into the authoring tool (MDS Studio) and translate that into a working application on the device.

**Responses and Objections to Paragraph 20:**  Express Mobile objects to this testimony because it appears to be at best cumulative to what is in the record regarding BlackBerry MDS Studio Version 4.1.  Shopify does not identify any exhibits that support this testimony.  To the extent that this testimony addresses content that is not in BlackBerry MDS Studio Version 4.1, the Court explained that Mr. Bateman is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.)  The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

19

**Paragraph 21:**  Mr. Bateman will testify that MDS Studio included functionality for creating applications that included the structure for information sent to and received from a web service. Mr. Bateman will testify that the applications were written primarily in XML, short for extensible markup language. Mr. Bateman will testify that there was often script also included with the application files, although the main language was XML (the "XML application").

**Responses and Objections to Paragraph 21:**  Express Mobile objects to this testimony

because it appears to be at best cumulative to what is in the record regarding BlackBerry MDS

Studio Version 4.1.  Shopify does not identify any exhibits that support this testimony, but Mr.

Schmandt has already included statements in his report including citations opining that

BlackBerry MDS Studio applications consist of XML.  (*See, e.g.*, Ex. 4, Schmandt Opening

Report ¶¶ 1084, 1086.)  To the extent that this testimony addresses content that is not in

BlackBerry MDS Studio Version 4.1, the Court explained that Mr. Bateman is "not terribly

important because the question, generally speaking, for these things that's important is what does

a person of ordinary skill understand from whatever the piece of prior art is.  And if the person

who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan.

28, 2022 Tr. at 11.) The proffered testimony is therefore irrelevant and prejudicial and should be

excluded pursuant to FRE 402 and 403.

**Paragraph 22:**  Mr. Bateman will testify that XML was used in order to be able to define the application so that it could run on multiple different platforms without modifying the original application. Mr. Bateman will testify that the applications created with MDS Studio were platform independent. Mr. Bateman will testify that there were efforts and work done to ensure that the XML applications were built in a way that would allow them to run on non-BlackBerry devices. Mr. Bateman will testify that MDS Studio was implemented in a way that would allow for creation of applications for non-BlackBerry devices.

**Responses and Objections to Paragraph 22:**  Express Mobile objects to the testimony

in this paragraph because it constitutes improper expert testimony from a purported fact witness

under Rule 702, and because it also includes testimony that includes opinions and alleged facts

that extend beyond the pertinent exhibits that are relevant to Version 4.1 of the BlackBerry MDS

Studio system.  *First*, Mr. Bateman's testimony that "the applications created with MDS Studio were platform independent" because they "could run on multiple different platforms without modifying the original application" is improper because it is a transparent attempt to apply the Court's claim construction of "device-dependent code" to the teachings of BlackBerry MDS Studio.  "Device-independent code" has been construed as "code that is not specific to the operating system, programming language, or platform of a device."  (D.I. 142 at 2.)  This improper expert opinion should be excluded.

*Second*, the testimony that "there were efforts and work done to ensure that the XML applications were built in a way that would allow them to run on non-BlackBerry devices," and that "MDS Studio was implemented in a way that would allow for creation of applications for non-BlackBerry devices is improper."  This testimony is improper because it is unsubstantiated, extends beyond the disclosures and relevant exhibits of BlackBerry MDS Studio Version 4.1 that are in the record, and is an attempt to gapfill deficiencies in Shopify's obviousness argument. This appears to be an attempt to use Mr. Bateman as an expert to suggest that it would be obvious to modify BlackBerry MDS Studio Version 4.1 so that it could be implemented on non-BlackBerry devices, even though the record evidence does not suggest that BlackBerry MDS Studio Version 4.1 was ever implemented on non-BlackBerry devices.  Moreover, as the Court explained, Mr. Bateman's testimony is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.)  Mr. Bateman's proffered testimony is improper, irrelevant, untimely expert opinion and prejudicial.

The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 23:**  Mr. Bateman will testify that MDS Studio included application components such as screen components, data elements, and message components. Mr. Bateman will testify that a screen component could be for example, a form to submit information, such as those commonly seen on webpages. Mr. Bateman will testify that the screen component would consist of subcomponents which would include things such as text boxes that you could enter text into or buttons that you could press to make something happen. Mr. Bateman will testify that a developer could construct the overall screen component by dragging and dropping those subcomponents onto a canvas provided by MDS Studio.

**Responses and Objections to Paragraph 23:**  Express Mobile objects to this testimony because it appears to be at best cumulative to what is in the record regarding BlackBerry MDS Studio Version 4.1.  Shopify does not identify any exhibits that support this testimony, but Mr. Schmandt has already included statements in his report including citations opining that BlackBerry MDS Studio applications consist of screen components, data elements, and message components.  (*See, e.g.*, Ex. 4, Schmandt Opening Report ¶¶ 1032-1036, 1086 ("BlackBerry MDS Studio teaches that the output of its IDE is an application that includes definitions relating to message components, screen components, and data components.").)  To the extent that this testimony addresses content that is not in BlackBerry MDS Studio Version 4.1, the Court explained that Mr. Bateman is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.) The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 24:**  Mr. Bateman will testify that MDS Studio also included message components. Mr. Bateman will testify that message components could be used to send messages to and receive messages from a web service. Mr. Bateman will testify that MDS Studio used WSDL as the description language for these messages.

**Responses and Objections to Paragraph 24:**  Express Mobile objects to this testimony because it appears to be at best cumulative to what is in the record regarding BlackBerry MDS Studio Version 4.1.  Shopify does not identify any exhibits that support this testimony, but Mr. Schmandt has already included statements in his report including citations opining that BlackBerry MDS Studio applications consist of message components that are used in connection with web services and WSDL.  (*See, e.g.*, Ex. 4, Schmandt Opening Report ¶¶ 1036, 1039.)  To the extent that this testimony addresses content that is not in BlackBerry MDS Studio Version 4.1, the Court explained that Mr. Bateman is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.) The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 25:**  Mr. Bateman will testify that MDS Studio used WSDL documents to create applications. Mr. Bateman will testify that these WSDL documents could be retrieved from third-party servers. Mr. Bateman will testify that MDS Studio could also retrieve a WSDL file that was locally stored on the machine running MDS Studio. Mr. Bateman will testify that MDS Studio included a feature, called a "wizard," that could take a WSDL document and, from that document and based on what was found in that document, generate an application that could interact with the web service. Mr. Bateman will testify that this was one of the functionalities of the "Quick Start" approach included in MDS Studio.

**Responses and Objections to Paragraph 25:**  Express Mobile objects to this testimony because it appears to be at best cumulative to what is in the record regarding BlackBerry MDS Studio Version 4.1.  Shopify does not identify any exhibits that support this testimony, but Mr. Schmandt has already included statements in his report including citations opining that BlackBerry MDS Studio used WSDL documents to create applications using the "Quick Start" approach.  (*See, e.g.*, Ex. 4, Schmandt Opening Report ¶¶ 1037, 1043, 1057.)  Therefore, Mr.

Bateman's proposed testimony is cumulative to expert testimony that Mr. Schmandt already

intends to offer.  To the extent that this testimony addresses content that is not in BlackBerry

MDS Studio Version 4.1, the Court explained that Mr. Bateman is "not terribly important

because the question, generally speaking, for these things that's important is what does a person

of ordinary skill understand from whatever the piece of prior art is.  And if the person who was

working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022

Tr. at 11.)  The proffered testimony is therefore irrelevant and prejudicial and should be excluded

pursuant to FRE 402 and 403.

**Paragraph 26:**  Mr. Bateman will testify that MDS Studio would read the WSDL file describing a web service and that the file contained the metadata describing each of the operations available from that web service. Mr. Bateman will testify that MDS Studio would analyze the expected inputs and outputs of the web service that was defined in the WSDL in order to create an XML application. Mr. Bateman will testify that the developer could include functionality available from the web service in the application. Mr. Bateman will testify that MDS Studio would use the information in the WSDL to create the screens based on the data about the inputs and outputs to the web service and the functionality available. Mr. Bateman will testify that MDS Studio would use the metadata in the WSDL, which provided hints as to what should be the appropriate interface, and mapping between screen components and message components.

**Responses and Objections to Paragraph 26:**  Express Mobile objects to this testimony

because it appears to be at best cumulative to what is in the record regarding BlackBerry MDS

Studio Version 4.1.  Shopify does not identify any exhibits that support this testimony, but Mr.

Schmandt has already included statements in his report including citations opining that

BlackBerry MDS Studio used WSDL documents to analyze the inputs and outputs of web

services.  (*See, e.g.*, Ex. 4, Schmandt Opening Report ¶¶ 1049-1053.)  Therefore, Mr. Bateman's

proposed testimony is cumulative to expert testimony that Mr. Schmandt already intends to offer.

Consistent with expert testimony, Mr. Bateman attempts to map BlackBerry MDS Studio

functionality to claim language in the '755, '287, and '044 patents that references "inputs and

outputs of the web service." This is improper and untimely expert opinion. Moreover, to the extent that this testimony addresses content that is not in BlackBerry MDS Studio Version 4.1, the Court explained that Mr. Bateman is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is. And if the person who was working on it has some different understanding, it really doesn't matter." (Ex. 1, Jan. 28, 2022 Tr. at 11.) Mr. Bateman's proffered testimony is improper, irrelevant, untimely expert opinion and prejudicial. The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 27:** Mr. Bateman will testify that MDS Studio could have been used to, for example, create an RSS reader application if there was a WSDL that defined an RSS reader. Mr. Bateman will testify that MDS Studio could also have been used to, for example, create a chat application if there was a WSDL that defined the web service endpoints for a chat application. Mr. Bateman will testify that MDS Studio could be used to create an application to interact with any web service defined in a WSDL document.

**Responses and Objections to Paragraph 27:** Express Mobile objects to this testimony because there is no reference to the relevant exhibits describing BlackBerry MDS Studio Version 4.1, or to any documentation that describes the system. The statements in this paragraph are akin to expert testimony as they attempt to extrapolate beyond the disclosures of the record based on Mr. Bateman's expert knowledge, and are not based on evidence that RSS reader applications or chat applications were ever created using BlackBerry MDS Studio. The testimony that "MDS Studio could be used to create an application to interact with any web service defined in a WSDL document" "if there was a WSDL that defined the web service" is also unfounded speculation and expert testimony. Therefore, the testimony in this paragraph should be excluded. Moreover, to the extent that this testimony addresses content that is not in BlackBerry MDS Studio Version 4.1, the Court explained that Mr. Bateman is "not terribly important because the question,

generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.)  Mr. Bateman's proffered testimony is improper, irrelevant, untimely expert opinion and prejudicial. The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 28:**  Mr. Bateman will testify that message components included variables and their data types. Mr. Bateman will testify that MDS Studio prevented developers from creating associations between message components and screen components if a variable in the message component had a data type that was not supported by the screen component. Mr. Bateman will testify that for example, a variable with a Boolean data type could not be mapped to a text box.

**Responses and Objections to Paragraph 28:**  Express Mobile objects to this testimony because there is no reference to the relevant exhibits describing BlackBerry MDS Studio Version 4.1, or to any documentation that describes the system.  The statements in this paragraph are at best cumulative to Mr. Schmandt's expert testimony about the data types that can be mapped to particular applications in BlackBerry MDS Studio, including boolean data types, to textboxes. (*See e.g.*, Ex. 4, Schmandt Opening Report ¶¶ 1077-1078 (Mr. Schmandt noting that he could not map "an Editbox to a Boolean").)  The testimony is also improper insofar as it extrapolates beyond the disclosures of the record about BlackBerry MDS Studio Version 4.1.  Moreover, Mr. Bateman's testimony is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.)  The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 29:**  Mr. Bateman will testify that MDS Studio would generate default screens by examining the WSDL file and using the information in the WSDL file as "hints" as to what to use as screen components. Mr. Bateman will testify that, for example, that if data in the WSDL file had the data type of "string," MDS Studio would create a text box based on that information. Mr. Bateman will testify that, as another example, if a value for the data defined in the WSDL file was one that could only have three or four options that were acceptable, MDS Studio would generate a dropdown box. Mr. Bateman will testify that MDS Studio had internal logic to decide which screen component should be used for a particular data type that was associated with data defined in a WSDL file for a given web service. Mr. Bateman will testify that, for example, MDS Studio would not create a radio button for an input that required a string. Mr. Bateman will testify that MDS Studio would create an XML application that would include preferred screen components for the web service in that MDS Studio would try to pick the appropriate screen component to use with the web service depending on the type of data that was expected, again based on the WSDL file.

**Responses and Objections to Paragraph 29:** Express Mobile objects to this testimony because there is no reference to the relevant exhibits describing BlackBerry MDS Studio Version 4.1, or to any documentation that describes the system.  The statements in this paragraph are at best cumulative to Mr. Schmandt's expert testimony about the data types that might be mapped to particular screen components based on analysis of WSDL files in BlackBerry MDS Studio. (*See e.g.*, Ex. 4, Schmandt Opening Report ¶¶ 1055-1057, 1077-1078.)  The testimony is also improper insofar as it extrapolates beyond the disclosures of the record about BlackBerry MDS Studio Version 4.1.  Moreover, Mr. Bateman's testimony is improper expert opinion because it attempts to map apparent claim language ("preferred screen components," which is virtually identical language to "preferred UI object" language in the claims) to alleged teachings of BlackBerry MDS Studio.  Finally, Mr. Bateman's testimony is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.)  The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 30:**  Mr. Bateman will testify that the XML applications created with MDS Studio could include functionality to access user data located on the device such as data from the user's calendar, contacts, or email.

**Responses and Objections to Paragraph 30:**  This proposed testimony is improper because it is again at best cumulative to evidence in the record testimony advanced by Shopify's expert, Mr. Schmandt, regarding his obviousness theories pertaining to alleged "device-dependent code" taught by BlackBerry MDS Studio.  (*See, e.g.*, Ex. 4, Schmandt Opening Report ¶ 1091; Ex. 5, Schmandt Reply Report ¶ 910 & n.1125 (citing BBSHOPEXPR_00000473 and noting that BlackBerry MDS Studio can be used to update or view information from the calendar, address book, or messages list of a BlackBerry Device).)  Once again, Shopify should not be permitted to use Mr. Bateman's cumulative testimony to improperly buttress expert testimony that it will offer through Mr. Schmandt.  Finally, Mr. Bateman's testimony is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter." (Ex. 1, Jan. 28, 2022 Tr. at 11.)  The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 31:**  Mr. Bateman will testify that MDS Studio stored applications in an application repository hosted on a server. Mr. Bateman will testify that when the developer using MDS Studio was ready to ship their application or deploy their application for use on a device, MDS Studio would collect together the components that were created and that defined the application and create a bundle and upload that bundle to the application repository.

**Responses and Objections to Paragraph 31:**  This proposed testimony is improper because it is again at best cumulative to evidence in the record testimony advanced by Shopify's expert, Mr. Schmandt, regarding his obviousness theories pertaining to the storage of applications in an "application repository."  (*See, e.g.*, Ex. 4, Schmandt Opening Report ¶ 1048

(citing DTX-081, Developer Guide at BBSHOPEXPR_00000367).)  Once again, Shopify should

not be permitted to use Mr. Bateman's cumulative testimony to improperly buttress expert

testimony that it will offer through Mr. Schmandt.  Finally, Mr. Bateman's testimony is "not

terribly important because the question, generally speaking, for these things that's important is

what does a person of ordinary skill understand from whatever the piece of prior art is.  And if

the person who was working on it has some different understanding, it really doesn't matter."

(Ex. 1, Jan. 28, 2022 Tr. at 11.)  The proffered testimony is therefore irrelevant and prejudicial

and should be excluded pursuant to FRE 402 and 403.

      **Paragraph 32:**  Mr. Bateman will testify that the Runtime Environment's purpose, at a
high level, was to take artifacts generated by MDS Studio that Mr. Bateman worked on and
construct that into a running application that a user could interact with on a device. Mr. Bateman
will testify that the Runtime Environment was essentially a software that ran on a BlackBerry
device that could download the application that then ran on the device. Mr. Bateman will testify
that this Runtime Environment would execute the XML application on the device.

      **Responses and Objections to Paragraph 32:** This proposed testimony is improper

because it is again at best cumulative to evidence in the record testimony advanced by Shopify's

expert, Mr. Schmandt, regarding his obviousness theories pertaining to BlackBerry MDS

Studio's Runtime Environment and its use to run applications.  (*See, e.g.*, Ex. 4, Schmandt

Opening Report ¶¶ 1082, 1088.)  Once again, Shopify should not be permitted to use Mr.

Bateman's cumulative testimony to improperly buttress expert testimony that it will offer

through Mr. Schmandt.  Moreover, aspects of this testimony are vague as to the "device" being

referenced, and Mr. Bateman's testimony is equivocal when it states that the MDS Runtime is

"***essentially*** a software that ran on a BlackBerry device that could download the application that

then ran on the device."  Such testimony is vague and lacks foundation.  Additionally, this

testimony includes opinions about how the MDS Runtime plays a role in "downloading" and

"executing" applications, which is an attempt to render expert opinions that are pertinent to the

claim language of the '755, '287, and '044 patents.  Ultimately, Mr. Bateman's testimony is "not

terribly important because the question, generally speaking, for these things that's important is

what does a person of ordinary skill understand from whatever the piece of prior art is.  And if

the person who was working on it has some different understanding, it really doesn't matter."

(Ex. 1, Jan. 28, 2022 Tr. at 11.)  Mr. Bateman's proffered testimony is improper, irrelevant,

untimely expert opinion and prejudicial.   The proffered testimony is therefore irrelevant and

prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 33:**  Mr. Bateman will testify that the Runtime Environment was Java-based, and specifically, implemented in something called Java Micro Edition, which was a slimmed down version of Java that was designed to run on mobile devices.

**Responses and Objections to Paragraph 33:**  This proposed testimony is improper

because it is again at best cumulative to evidence in the record advanced by Shopify's expert,

Mr. Schmandt, regarding his obviousness theories pertaining to the BlackBerry MDS Runtime

being Java-based.  (*See, e.g.*, Ex. 4, Schmandt Opening Report ¶ 1106 ("[T]he BlackBerry MDS

Runtime is a Java-Based runtime environment." (citing DTX-077,

BBSHOPEXPR_000000295)).)  Express Mobile objects to the extent that there is not a

documentary basis for the suggestion that the BlackBerry MDS Runtime was implemented in

Java Micro Edition or on mobile devices.  Once again, Shopify should not be permitted to use

Mr. Bateman's cumulative testimony to improperly buttress or gapfill expert testimony that it

will offer through Mr. Schmandt.  Finally, Mr. Bateman's testimony is "not terribly important

because the question, generally speaking, for these things that's important is what does a person

of ordinary skill understand from whatever the piece of prior art is.  And if the person who was

working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022

Tr. at 11.)  Mr. Bateman's proffered testimony is improper, irrelevant, untimely expert opinion

and prejudicial.  The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 34:**  Mr. Bateman will testify that there were a variety of BlackBerry devices that existed in early 2006. Mr. Bateman will testify that different Runtime Environments would need to be downloaded as appropriate for the specific device. Mr. Bateman will testify that different BlackBerry devices required different Runtime Environments in order for applications developed using MDS Studio to work.

**Responses and Objections to Paragraph 34:**  This proposed testimony is improper because it lacks foundation and is without citation.  No evidence of record or citations (even from Mr. Schmandt) demonstrates that BlackBerry MDS Studio Version 4.1 included "different Runtime Environments" that could be downloaded for "specific device[s]," or that "different BlackBerry devices required different Runtime Environments in order for applications developed using MDS Studio to work."  These opinions not only lack foundation or evidentiary support based on record evidence that describes BlackBerry MDS Studio Version 4.1, but the opinions also constitute expert testimony that is designed to gapfill deficiencies in Mr. Schmandt's expert opinions.   Indeed, Mr. Schmandt does not render opinions relating to obviousness suggesting that BlackBerry MDS Studio Version 4.1 included different Runtime Environments for allegedly different BlackBerry devices.  Dr. Almeroth has not had an opportunity to respond to Mr. Bateman's new opinions or theories, and if Mr. Bateman had proper foundation for them the alleged "facts" in this proffered paragraph could have been tendered to Mr. Schmandt in advance of expert discovery and included in his report and Express Mobile would have had an opportunity to respond to such alleged disclosure and opinions. Once again, Shopify should not be permitted to use Mr. Bateman's testimony to improperly buttress or gapfill expert testimony that it will offer through Mr. Schmandt.  Finally, Mr. Bateman's testimony is "not terribly important because the question, generally speaking, for these things that's important is what does

a person of ordinary skill understand from whatever the piece of prior art is.  And if the person

who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan.

28, 2022 Tr. at 11.)  Mr. Bateman's proffered testimony is improper, irrelevant, untimely expert

opinion and prejudicial.   The proffered testimony is therefore irrelevant and prejudicial and

should be excluded pursuant to FRE 402 and 403.

**Paragraph 35:** Mr. Bateman will testify that the Runtime Environment was an add-on
feature for a BlackBerry device and needed to be downloaded as it did not come pre-loaded on
the device like other programs (e.g., operating system or email client) may have been.

**Responses and Objections to Paragraph 35:**  This proposed testimony is improper

because it is again at best cumulative to evidence in the record advanced by Shopify's expert,

Mr. Schmandt, regarding his obviousness theories pertaining to the BlackBerry MDS Runtime

not being pre-loaded on BlackBerry devices.  (*See, e.g.*, Ex. 5, Schmandt Reply Report ¶ 902

(arguing that "[t]he documentation relating to BlackBerry MDS Studio shows that a user must

first download the BlackBerry MDS Runtime from BlackBerry in order to use applications

created by BlackBerry MDS Studio.  A user would have no need to do so if the BlackBerry MDS

Runtime came pre-installed on every device." (citing BBSHOPEXPR_00000378)).)  Once again,

Shopify should not be permitted to use Mr. Bateman's cumulative testimony to improperly

buttress or gapfill expert testimony that it will offer through Mr. Schmandt.  Finally, Mr.

Bateman's testimony is "not terribly important because the question, generally speaking, for

these things that's important is what does a person of ordinary skill understand from whatever

the piece of prior art is.  And if the person who was working on it has some different

understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.)  Mr. Bateman's

proffered testimony is improper, irrelevant, untimely expert opinion and prejudicial.   The

proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 36:**  Mr. Bateman will testify that the XML application was also downloaded to the BlackBerry device. Mr. Bateman will testify that a Runtime Environment on a BlackBerry device associated with an application repository server would display a list of available XML applications for download, and if an XML application was selected for download, the application would be downloaded from the server to the BlackBerry device. Mr. Bateman will testify that this downloading would occur over the network.

**Responses and Objections to Paragraph 36:**  Express Mobile objects to this testimony as improper expert opinion that is attempting to characterize aspects of BlackBerry MDS Studio to suggest that it falls within the claim requirement that the application be "provid[ed] over a network," as certain of the asserted claims of the '755, '287, and '044 patents require.  Expert opinion to this effect is already provided by Mr. Schmandt.  (*See, e.g.*, Ex. 4, Schmandt Opening Report ¶ 1109 (arguing that "BlackBerry MDS Studio teaches that the application is provided over the network").)  Once again, Shopify should not be permitted to use Mr. Bateman's cumulative testimony to improperly buttress or gapfill expert testimony that it will offer through Mr. Schmandt.  Finally, Mr. Bateman's testimony is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.)  Mr. Bateman's proffered testimony is improper, irrelevant, untimely expert opinion and prejudicial. The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 37:**  Mr. Bateman will testify that this XML application would be sent to a BlackBerry mobile device. Mr. Bateman will testify that once the XML application was received by a device, it was loaded into memory by the Runtime Environment on the device. Mr. Bateman will testify that the runtime would then render the XML application to present it on the device using the runtime.

**Responses and Objections to Paragraph 37:**  Express Mobile incorporates its objections to paragraph 36, as the proffered testimony in this paragraph appears to be a continuation of the testimony from paragraph 37.  The additional testimony in paragraph 37 appears to use expert testimony to further characterize the functionality of BlackBerry MDS Studio Version 4.1 without sufficient foundation and without citation to any documents. Moreover, the testimony in this paragraph appears repetitive to the testimony proffered above in paragraph 32, and Express Mobile incorporates the objections to that paragraph as well.  Once again, Shopify should not be permitted to use Mr. Bateman's cumulative testimony to improperly buttress or gapfill expert testimony that it will offer through Mr. Schmandt.  Finally, Mr. Bateman's testimony is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.)  Mr. Bateman's proffered testimony is improper, irrelevant, untimely expert opinion and prejudicial.   The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 38:**  Mr. Bateman will testify that, for example if the XML application defined a form to input data, MDS Studio would have defined that form in XML, and then the runtime would load that XML and display it to the user of the device, in the form intended by the application developer.

**Responses and Objections to Paragraph 38:**  Express Mobile objects to this testimony as improper expert opinion that is attempting to characterize aspects of BlackBerry MDS Studio to suggest that it falls within the claim requirement that the device employ inputs and outputs of "defined UI objects," as asserted claims of the '755, '287, and '044 patents.  Shopify's repeated reference to "defin[ing] a form" (a UI object) in connection with an application, followed by

subsequent display, is a backdoor attempt to proffer expert opinions from Mr. Bateman to attempt to argue that BlackBerry MDS Studio meets the claim language.  Once again, Shopify should not be permitted to use Mr. Bateman's testimony to improperly buttress or gapfill expert testimony that it will offer through Mr. Schmandt.  Finally, Mr. Bateman's testimony is "not terribly important because the question, generally speaking, for these things that's important is what does a person of ordinary skill understand from whatever the piece of prior art is.  And if the person who was working on it has some different understanding, it really doesn't matter." (Ex. 1, Jan. 28, 2022 Tr. at 11.)  Mr. Bateman's proffered testimony is improper, irrelevant, untimely expert opinion and prejudicial.   The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

  **Paragraph 39:**  Mr. Bateman will testify that based on the structure defined in the XML application, the Runtime Environment would be able to make web service calls directly to web services over the Internet and perform functionalities defined by those web services. Mr. Bateman will testify that the Runtime Environment was responsible for receiving the messages from a web service and interpreting the responses for display on the BlackBerry device.

  **Responses and Objections to Paragraph 39:**  This proposed testimony is improper because it is again at best cumulative to evidence in the record advanced by Shopify's expert, Mr. Schmandt, regarding his obviousness theories pertaining to the BlackBerry MDS Runtime interpreting and/or executing the Application, as discussed above with respect to paragraphs 32, 36, and 37—the objections for which are incorporated by reference.  Express Mobile further notes that the testimony in this paragraph is cumulative to other expert opinions and evidence cited by Mr. Schmandt.  (*See, e.g.*, Ex. 5, Schmandt Reply Report ¶ 1080 (citing and quoting BBSHOPEXPR_000000296 ("The BlackBerry device downloads the package from the repository and the runtime system loads and interprets the XML metadata as a Java application.")).)  Once again, Shopify should not be permitted to use Mr. Bateman's cumulative

testimony to improperly buttress or gapfill expert testimony that it will offer through Mr.

Schmandt.  Finally, Mr. Bateman's testimony is "not terribly important because the question,

generally speaking, for these things that's important is what does a person of ordinary skill

understand from whatever the piece of prior art is.  And if the person who was working on it has

some different understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.)  Mr.

Bateman's proffered testimony is improper, irrelevant, untimely expert opinion and prejudicial.

The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant

to FRE 402 and 403.

      **Paragraph 40:**  Mr. Bateman will testify that the file setup.exe (DTX105) produced by
BlackBerry in this litigation is a program ("the Executable Program") that he recognizes as the
MDS Studio program he worked on. Mr. Bateman will testify that he recognizes the functionality
present in the Executable Program as functionality present in the version of MDS Studio that he
worked on. Mr. Bateman will testify that the aspects of the Executable Program he recognizes
were all found in the version of the MDS Studio that he worked on.

      **Responses and Objections to Paragraph 40:**  This proposed testimony is improper

because it is again at best cumulative to evidence in the record advanced by Shopify's expert,

Mr. Schmandt, regarding his obviousness theories pertaining to BlackBerry MDS Studio that

involve references to a file known as "setup.exe."  (*See, e.g.*, Ex. 4, Schmandt Opening Report ¶¶

1038-1043 (referencing and discussing use of "setup.exe" BlackBerry MDS Studio file).)  Once

again, Shopify should not be permitted to use Mr. Bateman's cumulative testimony to

improperly buttress or gapfill expert testimony that it will offer through Mr. Schmandt.  Finally,

Mr. Bateman's testimony is "not terribly important because the question, generally speaking, for

these things that's important is what does a person of ordinary skill understand from whatever

the piece of prior art is.  And if the person who was working on it has some different

understanding, it really doesn't matter."  (Ex. 1, Jan. 28, 2022 Tr. at 11.)  Mr. Bateman's

proffered testimony is improper, irrelevant, untimely expert opinion and prejudicial.  The

proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to

FRE 402 and 403.

**Paragraph 41:**  Mr. Bateman will testify that he is familiar with the "Quick Start
approach wizard", the "Bottom Up approach wizard" and the "Top Down approach wizard"
present in MDS Studio, documents relating to MDS Studio, and in the Executable Program. Mr.
Bateman will testify that each wizard was present in the version of MDS Studio that he worked
on. Specifically, Mr. Bateman will testify that the Quick Start approach wizard functionality
found in the Executable Program was present in the version of MDS Studio that he worked on.

**Responses and Objections to Paragraph 41:**  Express Mobile incorporates its responses

and objections to paragraph 40.  This proposed testimony is again improper because it is at best

cumulative to evidence in the record advanced by Shopify's expert, Mr. Schmandt, regarding his

obviousness theories pertaining to BlackBerry MDS Studio that address "setup.exe" and the use

of the BlackBerry MDS Studio's "Quick Start Approach Wizard."  (*See, e.g.*, Ex. 4, Schmandt

Opening Report ¶ 1043 (referencing and discussing use of "setup.exe" BlackBerry MDS Studio

file in the context of the "Quick Start Approach Wizard").)  Once again, Shopify should not be

permitted to use Mr. Bateman's cumulative testimony to improperly buttress or gapfill expert

testimony that it will offer through Mr. Schmandt.  Finally, Mr. Bateman's testimony is "not

terribly important because the question, generally speaking, for these things that's important is

what does a person of ordinary skill understand from whatever the piece of prior art is.  And if

the person who was working on it has some different understanding, it really doesn't matter."

(Ex. 1, Jan. 28, 2022 Tr. at 11.)  Mr. Bateman's proffered testimony is improper, irrelevant,

untimely expert opinion and prejudicial.   The proffered testimony is therefore irrelevant and

prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 42:**  Mr. Bateman will testify that through the Quick Start approach wizard,
MDS Studio could create screens based on an analysis of a WSDL file, as discussed above, and
as demonstrated through an example XML application created with the Executable Program. Mr.
Bateman will testify that the functionality present in the Executable Program was also present the
version of MDS Studio that he worked on.

**Responses and Objections to Paragraph 42:**  Express Mobile incorporates its responses and objections to paragraphs 40 and 41.  Mr. Schmandt renders expert opinions based on the Quick Start approach wizard, and does so using a WSDL document.  (*See, e.g.*, Ex. 4, Schmandt Opening Report ¶ 1043.)  For the same reasons discussed immediately above, this proposed testimony from Mr. Bateman is at best cumulative and its probative value is substantially outweighed by its cumulative nature and prejudicial effects.  The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 43:**  Mr. Bateman will testify that the functionality of preventing an invalid message data type/screen component association (discussed above) was present in the version of MDS Studio that he worked on, and its operation is present in the Executable Program and discussed in documents relating to MDS Studio. Mr. Bateman will testify that this feature stopped developers from making mistakes.

**Responses and Objections to Paragraph 43:**  Express Mobile incorporates its responses and objections to paragraphs 28, 40, 41, and 42.  Mr. Schmandt renders expert opinions regarding "valid" data type and screen component associations.  (*See, e.g.*, Ex. 4, Schmandt Opening Report ¶ 1078 (discussing attempt to associate "Boolean" data type with an "Editbox" screen component).)  For the same reasons discussed immediately above, this proposed testimony from Mr. Bateman is at best cumulative and its probative value is substantially outweighed by its cumulative nature and prejudicial effects.  The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

**Paragraph 44:**  Mr. Bateman will testify that MDS Studio included an application repository as shown in the Executable Program.

**Responses and Objections to Paragraph 44:**  Express Mobile incorporates its responses and objections to paragraphs 40 through 43.  Mr. Schmandt renders expert opinions regarding the existence of the application repository within the BlackBerry MDS Studio program.  (*See, e.g.*,

Ex. 4, Schmandt Opening Report ¶ 1084 (showing screenshot of application "File Repository").)

For the same reasons discussed immediately above, this proposed testimony from Mr. Bateman

is at best cumulative and its probative value is substantially outweighed by its cumulative nature

and prejudicial effects. The proffered testimony is therefore irrelevant and prejudicial and should

be excluded pursuant to FRE 402 and 403.

**Paragraph 45:** Mr. Bateman will testify that the version of MDS Studio that he worked included functionality for analyzing WSDL documents in order to create an application, and similar functionality is present in the Executable Program.

**Responses and Objections to Paragraph 45:** Express Mobile incorporates its responses

and objections to paragraphs 40 through 44.  Mr. Schmandt renders expert opinions regarding the

analysis of WSDL documents to generate applications using the BlackBerry MDS Studio

program, as discussed above.  (*See, e.g.*, Ex. 4, Schmandt Opening Report ¶ 1043.)  For the same

reasons discussed immediately above, this proposed testimony from Mr. Bateman is at best

cumulative and its probative value is substantially outweighed by its cumulative nature and

prejudicial effects.  The proffered testimony is therefore irrelevant and prejudicial and should be

excluded pursuant to FRE 402 and 403.

**Paragraph 46:** Mr. Bateman will testify that certain features in the Executable Program were part of the version of MDS Studio that was released to the public prior to January 2008. (Footnote 8 Text: Shopify understands that the Court has precluded Mr. Bateman from discussing his patent that he testified is related to MDS Studio. D.I. 343 (resolving D.I. 316 as stated at D.I. 342, pp. 77-89). Shopify has therefore not included Mr. Bateman's proposed testimony on this topic, even though Mr. Bateman is familiar with, and would testify to, the disclosures in this patent if he were permitted to do so.

**Responses and Objections to Paragraph 46:** Express Mobile incorporates its responses

and objections to paragraphs 40 through 45.  As a general matter, Mr. Bateman's discussion of

the BlackBerry MDS Studio executable program is inappropriate and unnecessary because doing

so is already in the province of Shopify's experts, Mr. Schmandt.  Moreover, the proposed

testimony in this paragraph is overly vague because it refers generically to testimony about "certain features in the Executable Program" without explaining what those features will be. Additionally, Shopify's footnote 8 raises concerns that Shopify will attempt to do further gapfilling and provide additional testimony that is beyond the scope of the evidence about the BlackBerry MDS Studio Version 4.1 (*e.g.*, the disclosures of patents that do not describe the system and the Court already held were improper to discuss). The proffered testimony is therefore irrelevant and prejudicial and should be excluded pursuant to FRE 402 and 403.

Dated: May 20, 2022

DEVLIN LAW FIRM LLC

*/s/ Timothy Devlin*
Timothy Devlin (No. 4241)
tdevlin@devlinlawfirm.com
Robert Kiddie (admitted *pro hac vice*)
Texas Bar No. 24060092
rkiddie@devlinlawfirm.com
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

OF COUNSEL:

James R. Nuttall (admitted *pro hac vice*)
John L. Abramic (admitted *pro hac vice*)
Michael Dockterman (admitted *pro hac vice*)
Robert F. Kappers admitted (*pro hac vice*)
Tron Fu (admitted *pro hac vice*)
Katherine H. Johnson (admitted *pro hac vice*)
jnuttall@steptoe.com
jabramic@steptoe.com
mdocketerman@steptoe.com
rkappers@steptoe.com
tfu@steptoe.com
kjohnson@steptoe.com
STEPTOE & JOHNSON LLP
227 West Monroe, Suite 4700
Chicago, IL 60606
(312) 577-1300

Christopher A. Suarez (admitted *pro hac vice*)
csuarez@steptoe.com
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-8131

*Attorneys for Defendant/Counterclaim Plaintiff*
*Express Mobile, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that copies of the within filing were served on

counsel of record via CM/ECF on May 20, 2022.

*/s/ Timothy Devlin*
Timothy Devlin

41